[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 234 
This is a consolidated appeal of two cases, one against each of the defendants (appellants), which by consent of parties were consolidated for trial before a jury. Jimmy Pittman was found guilty of rape in the first degree, in that he did engage in sexual intercourse with a female by forcible compulsion, in violation of Section 13A-6-61 of the Criminal Code, and Wanda Pittman was found guilty of "aiding and abetting" a male in committing the same alleged rape. Each defendant was sentenced by the court to imprisonment for life.
At the time of the trial, the alleged victim, who testified as a witness for the State, was thirteen years old and was residing at Saint Mary's Home in Mobile in the custody of the Department of Pensions and Security. During the time of the incident or incidents upon which the prosecutions were based, the victim had been living in the home of the defendants, a married couple. Wanda Pittman was her adoptive mother, and by virtue of that relationship Jimmy Pittman was the victim's stepfather. The victim had been living with the defendants practically all of her life.
A recital of the sexually explicit testimony pertinent to the alleged crimes is unnecessary for a proper determination of the issues involved on appeal. It should be stated, however, that there was substantial evidence that on one or more occasions Jimmy Pittman had sexual intercourse with the alleged victim. This evidence consisted almost exclusively of the testimony of the alleged victim. Her testimony as to vaginal penetration was corroborated by the testimony of an examining physician.
Jimmy Pittman testified in emphatic denial of sexual intercourse and any attempt to have sexual intercourse with the alleged victim at any time. Wanda Pittman testified emphatically that she had never aided Jimmy Pittman in any effort by him to have sexual intercourse with the alleged victim and had no knowledge of any such incident. The denials of guilt by defendants were bolstered somewhat by testimony of two children of the defendants tending to show that the alleged crimes did not occur. Testimony by Jimmy Pittman's mother was to the effect that she had witnessed some unbecoming conduct between the alleged victim and some boys. There was substantial testimony by some witnesses as to the good reputation of the defendants.
Five issues are presented in appellants' brief. However, three pertain exclusively to the case against appellant Wanda Pittman. We will defer consideration thereof until after our discussion of the two issues pertinent to the cases of both appellants.
Appellants assert that the "State did not prove forcible compulsion as alleged in the indictments."
During the lengthy testimony of the alleged victim, she said:
 "A. Okay. He [Jimmy Pittman] came into my room. See, I was holding the door and finally I —
 "Q. Let me interrupt you. Did you hear him at the door or what happened?
 "A. I heard him trying to unlock it with something. I don't know what it was.
"Q. You had your door locked?
"A. Yes, sir.
"Q. All right.
 "A. And, I lost all my strength and I yelled real loud and I think my brothers woke up, because he went in the room and he asked them if they ever had a nightmare. And they said no. And he told them that is what I was having. So, *Page 235 
he came back to my room and I picked up my brush. I was going to hit him with it, because I was scared. He said come to your mother's room. So, I walked across the hall to my mother's room. And, I said Mama and she said what in a harsh voice and I turned around to her and I said Mama, why are you mad at me? And she turned back around and I said why are you mad at me. And, you know, I figured out they was mad at me because I woke my brothers up. So they made me lay down on the bed and they started talking. I heard her, heard Mama say leave her alone, leave her alone twice. And then they whispered some more and then Mama said Karen,[1] tell me what you said about the rape. And I told her his name. [This was with reference to an unrelated incident, not involving the alleged victim in the instant case or any member of her family]. She said well, roll over for your daddy and I said no. And she said either you will roll over or I will tie you down. So naturally, I rolled over and he started, you know, raping me. Then, Mama got over there and she unbuttoned my nightshirt and raised up my bra. And then she stuck my knees straight up and then, you know, straight out and then he raped me again. After he got off of me, I left the room.
 "Q. What happened after you left the room? Where did you go then?
 "A. I went to the bathroom and then I went to my room and went to bed.
"Q. Was there any more contact with him that night?
"A. No."
Other incidents essentially the same as that just quoted were related in the testimony of the alleged victim.
Notwithstanding the undesirable incoherence in some respects of the testimony of the alleged victim as to the extent of "forcible compulsion," we are convinced that the testimony was sufficient to present a jury question as to the existence of said element of rape in the first degree.It meets the requirement of the first alternative of "forcible compulsion" of Alabama Criminal Code, § 13A-6-60 (8), which sets forth two alternative requirements as follows:
 "FORCIBLE COMPULSION. Physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person."
It is clear that the force required to consummate rape in the first degree is necessarily relative. The force required to consummate the crime against a mature female is not the standard for application in a case in which the alleged victim is a child thirteen years of age.
The next issue presented by both appellants is thus stated in brief of their counsel:
 "WAS A CONVERSATION BETWEEN ZELMA FLOYD, AN EMPLOYEE OF THE HOUSTON COUNTY DEPARTMENT OF PENSIONS AND SECURITY, AND WANDA PITTMAN ADMISSIBLE IN EVIDENCE WHEN THERE WAS NO SHOWING THAT WANDA PITTMAN HAD BEEN ADVISED OF HER RIGHTS ON THE OCCASION AS MRS. PITTMAN WAS UNDER INVESTIGATION BY THE DEPARTMENT FOR THE RAPE FOR WHICH SHE WAS LATER PROSECUTED?"
During the direct examination by the State of the witness Velma Floyd, she testified as follows:
 "Q. Did she tell you that she did leave Karen by herself with Jimmy Pittman in a motel in Tallahassee and Karen begged her not to leave her there alone with Jimmy Pittman?
"A. She admitted that to me in my office.
 "Q. Did she ever tell you that Karen said she would like to stay or agreed to stay?
"A. No." *Page 236 
There was no objection by defendant to the quoted inquiry. However, on cross-examination, the witness disclosed that at the time Wanda Pittman told the witness about the incident in a motel in Tallahassee, the witness "never gave any Miranda
warning to Wanda Pittman" prior to the time the witness talked with Wanda Pittman. Thereupon, the following occurred on cross-examination:
 "Q. And, you never followed the necessary or the other steps necessary for taking a statement from a Defendant?
 "MR. SORRELLS [District Attorney]: Judge, we object to that.
"THE COURT: Well, she wasn't under arrest there, Sam.
"I sustain the objection.
"BY MR. ADAMS:
 "Q. At that time, had an investigation centered on Jimmy and Wanda Pittman?
"A. At the time Mrs. Pittman was in my office?
"Q. Right.
"A. Yes, sir.
"MR. ADAMS: That is all. Thank you.
"MR. SORRELLS: That is all we have.
"THE COURT: You may step down. "(Witness excused)."
Appellants' argument in their brief as to the issue now under consideration concludes as follows:
 "Therefore, it appears that evidence obtained from Mrs. Pittman by Mrs. Floyd should not have been admissible against Mrs. Pittman because she had not been advised of her rights. As this was a critical stage in the prosecution of this case."
It appears therefrom that appellant Jimmy Pittman presents no issue as to the question as to the admissibility against him of the testimony of Mrs. Floyd. By reason of what we determine hereinafter as to the issues pertinent to the case against Mrs. Pittman exclusively, we find it unnecessary to determine the particular issue now under consideration.
The final contention for a reversal by both appellants is based upon what occurred during the testimony of Donna Hanson, who had been recalled as a witness by defendant in surrebuttal of the testimony of Phillip Hardy, who had testified somewhat disparagingly as to the "general reputation for truth and veracity" of Donna Hanson, whom Phillip Hardy, the principal of Carver Middle School, had known while Donna was a student at the school. Donna Hanson had testified that the alleged victim had told her that Jimmy Pittman never raped her. Principal Hardy had testified on cross-examination by defendants that he had based his disparaging testimony as to the reputation of Donna Hanson on the following:
 "A. Because there have been situations where she has not told the truth in the past.
"Q. Has not told the truth to you about what?
 "A. Specifically concerning one situation where she and another student that had been in this Court Room also, I believe were in essence, skipping class.
 "Q. Who was the other student that was skipping class?
"A. Karen [Surname of alleged victim, now omitted]."
The transcript shows the following during the direct examination of Donna Hanson while she was on the stand as a surrebuttal witness of defendants:
 "Q. And, have you been in trouble out there with the principal?
"A. Once.
"Q. All right. What was that trouble about?
"A. Skipping class.
"Q. Who was with you when you skipped class?
"A. Karen _____.
 "Q. What did you tell the principal about skipping class?
"MR. SORRELLS: Judge, can we approach the bench?
"THE COURT: Yes.
 "(Thereupon, an off the Record discussion was held between the Court and the Attorneys of Record. Upon completion *Page 237 
of said discussion, the following proceedings were had, to-wit:)
 "THE COURT: I am not going to let either one of you get into specifics. I sustain the objection.
 "MR. ADAMS: For the Record, I would like to ask this question.
"MR. SORRELLS: Judge —
 "THE COURT: I am assuming the Court Reporter already has gotten it down, haven't you?
"MR. SORRELLS: I object to the question.
"THE COURT: And, I sustain the objection.
 "MR. ADAMS: I can't ask her about what she told the principal and why?
 "THE COURT: I am not going to allow you to get into specific instances, no, sir.
"MR. ADAMS: All right. That is all. Thank you.
"MR. SORRELLS: No questions.
"THE COURT: You may step down. "(Witness excused.)
"THE COURT: All right.
"MR. ADAMS: That is all we have.
"MR. SORRELLS: That is all we have."
There was no further evidence in the case.
In our opinion, the testimony of Principal Hardy in disparagement of the reputation for truth and veracity of the witness Donna Hanson should never have been admitted in evidence. This, for the reason that he was largely basing his testimony on what he himself believed to be an untruthful statement by Donna Hanson, which he said would cause him to "have problems believing her." Nevertheless, neither on the trial nor on appeal has the question of the admissibility of the testimony of Principal Hardy been raised. We agree with counsel for appellant that the "testimony of Donna Hanson was beneficial to the defendants, as `she had testified' that the alleged victim in the case had said that Jimmy Pittman never raped her." Nevertheless, we know of no authority that justifies the introduction into the evidence by a party of testimony of a witness for such party that Donna Hanson had told the truth or a falsehood as to what a witness for the other party previously said as to an unrelated matter. The only case cited by appellant on the point is Gibson v. Gaines,198 Ala. 583, 73 So. 929 (1916), wherein it was held in an action of ejectment, at 198 Ala. 587, 73 So. 929:
 "Defendant having given in evidence such declarations of the coterminous landowners, as tending to show the claim of ownership of the Gibsons of the land in question to the fence line, or the line on which the fence was later erected, and to show a recognition by George S. Gaines and Frances A.E. Gaines of such claim of ownership to said line, it is clear that this tendency of the evidence was subject to be rebutted by evidence tending to show conflicting declarations of ownership, of such respective coterminous landowners, made while they were in possession of the respective tracts of land on both sides of the line in dispute. It is the best evidence obtainable; it is a part of the res gestae of possession."
Gibson v. Gaines is no authority for the proposition now advanced by appellant, which would in effect merely array testimony of a witness for one party against the testimony of a witness for the other party as to whether that which one had previously said to another as to a matter irrelevant to the instant cases was true or false. The trial court was correct in sustaining the objection of the State to such an inquiry.
The next issue considered is one pertaining to the case of Wanda Pittman only, as to which the attorneys for appellant state, "the case against Wanda Pittman is due to be reversed and rendered." The indictment of Wanda Pittman charges that she "did aid and abet Robert Pittman, a male, to engage in sexual intercourse with Karen _____, a female, by forcible compulsion [emphasis supplied]." Nowhere else in the record proper do we find the name "Robert Pittman." With that single exception, the male charged with the alleged rape is uniformly referred to in the transcript of the proceeding as Jimmy Pittman; in official documents accompanying the record proper we find his name as *Page 238 
Jimmy Floyd Pittman, but nowhere as Robert Pittman. Although others may explain the reason for this discrepancy between the indictment and the evidence, we cannot do so. The difference between the name of the male who allegedly committed rape of the alleged victim as found in the indictment and the name of such person as found in the transcript of the testimony constitutes a material variance between the indictment and the evidence. The only response in the brief of appellee to appellants' contention as to the variance is that such "variance issue is raised too late for review," which is supplemented by statements in appellee's brief that at "no time before or after trial did the Appellants object to the indictment," that appellants "neither demurred nor [moved] to quash the indictment," and that because appellants "in their motion to exclude never mentioned the word, `variance,' such an objection is waived and cannot be raised for the first time on appeal."
We fail to understand why the variance between the indictment and the evidence as to the name of the alleged rapist did not surface more than it did on the trial, but it was mentionedonce in the trial court. Soon after the conclusion of the court's oral charge to the jury, the following occurred:
 "THE COURT: All right. Mr. Sorrells, does the State wish to take exception to the Court's oral charge?
"MR. SORRELLS: The State is satisfied, Your Honor.
"THE COURT: Mr. Adams?
 "MR. ADAMS: Yes. We wish to take exception to a portion of it, Your Honor.
"THE COURT: Okay.
 "MR. ADAMS: May I approach the Bench with Mr. Sorrells?
"MR. SORRELLS: Uh-huh. (Affirmative response.)
"THE COURT: Okay.
 "(Thereupon, an off the Record discussion was held between the Court and the Attorneys of Record. Upon completion of said discussion, the following proceedings were had, to-wit:)
 "All right. With that, Ladies and Gentlemen, you may retire and make up your verdicts in this case. And, the Court has prepared forms of verdicts in line with those given you in the Court's Oral Charge to aid and assist you in arriving at the form of your verdict. You may retire at this time.
 "(Thereupon, the trial jury proceeded to the Jury Room in order to deliberate and the following proceedings were held outside the presence and hearing of the Trial Jury, to-wit:)
 "THE COURT: All right. Let the Record show that this is out of the presence and hearing of the Trial Jury.
 "MR. ADAMS: Your Honor, at this time we would like to make an objection to the Court's Oral Charge pertaining to the Defendant Wanda Pittman in that the Indictment in this case says that she did aid and abet Robert Pittman. And, the Court charged that she aided and abetted Jimmy Pittman. And, we except to any portion where Jimmy Pittman's name was used in connection with her.
 "THE COURT: All right. We will be at recess until the jury reaches their verdict."
Nothing further occurred until the jury returned with the verdicts finding the defendant in each case, naming Jimmy Pittman and Wanda Pittman respectively, "guilty of Rape, First Degree as charged in the Indictment."
Although there was a failure to bring the variance to the attention of the trial court as vividly and emphatically as it should have been, we do not agree with appellee that it was not brought to the attention of the trial court and that it was first raised on appeal. We do not agree with attorneys for the appellants that the case of Wanda Pittman should be reversed and rendered. Her case should be reversed and remanded forfurther proceedings consistent with this opinion.
By the only other issue pertinent to the case of Wanda Pittman exclusively, counsel for appellants raises the question *Page 239 
as to whether the trial court erred in not granting her request for the affirmative charge or for a judgment of acquittal by reason of what he says is a presumption "that the crimes committed by her were committed because of her husband's coercion." He cites authorities on the subject of such presumption at common law, but they do not lead to the conclusion that defendant was entitled to the affirmative charge in her favor or a judgment of acquittal by reason of the presumption. Counsel for appellee considers this issue more comprehensively by questioning the present existence of such a presumption and contending that, "even if the presumption still exists," it was rebutted by evidence sufficient to show that she was not coerced by her husband. Appellee cites Gamble,McElroy's Alabama Evidence, § 457.06 (3 ed. 1977), which we think correctly and compactly states the law on the subject, with a citation of the authorities relied upon, at page 851, as follows:
 "When a woman commits a misdemeanor in the presence of her husband and under his coercion, she generally is excused from criminal liability. If the undisputed evidence shows, or the jury is reasonably satisfied, that the misdemeanor for which a woman is being tried was committed in the present of her husband, there is a rebuttable presumption that she acted under his coercion; and she must be acquitted unless the evidence in the case warrants a finding and satisfies the jury beyond a reasonable doubt that she was not coerced by her husband.
 "A woman is not excused from criminal liability for a murder committed by her in the presence of her husband even if she acted under his coercion. Whether a woman is excused from criminal liability for her commission of a felony other than murder, in the presence of and under the coercion of her husband, has not been decided by the appellate courts of Alabama. The Supreme Court has merely noted that, under the decisions of other states, the wife's excuseableness depends upon the nature, grade and heinousness of the felony."
The particular issue now under consideration is raised for the first time on appeal. It was not mentioned by the trial court or by any of the attorneys for any of the parties during the trial. If it had been raised on the trial, the trial court would have been given an opportunity to determine, as a matter of law, whether the presumption of coercion by the husband exists and, if so, would likely have instructed the jury that it should determine whether the evidence was sufficient to rebut the presumption. There is no contention by appellant that the presumption is not rebuttable. We are convinced that the evidence was sufficient to present a jury issue as to whether the claimed presumption was rebutted by the evidence in the case. We think it appropriate to limit our conclusions as to the particular issue under consideration so as to avoid thereby any semblance of any advisory opinion that could mislead either of the parties in any further proceeding against Wanda Pittman for the crime charged in the instant case against her.
The judgment in the case against Jimmy Pittman should be affirmed. For the reasons stated as to the material variance between the indictment and the proof in the case against Wanda Pittman, the judgment should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED IN THE APPEAL OF JIMMY PITTMAN; REVERSED AND REMANDED IN THE APPEAL OF WANDA PITTMAN.
All the Judges concur.
[1] The alleged victim's first name. *Page 240