597 So.2d 721 (1991)
Ex parte State of Alabama.
(Re Willie James POWE v. STATE).
1901568.
Supreme Court of Alabama.
December 13, 1991.
Rehearing Denied February 14, 1992.
*722 James H. Evans, Atty. Gen., and Jean Williams Brown, Asst. Atty. Gen., for petitioner.
Lawrence B. Sheffield III and John A. Lentine of Sheffield, Sheffield, Sheffield & Lentine, P.C., Birmingham, for respondent.
INGRAM, Justice.
Willie James Powe was charged, in a two-count indictment, with first degree rape, in violation of § 13A-6-61, Ala.Code 1975, and second degree rape, in violation of § 13A-6-62. The charges stemmed from allegations by Powe's minor daughter, N.S., that Powe sexually assaulted her. Powe was convicted, after a jury trial, of rape in the first degree and was sentenced to a term of 12 years in the state penitentiary. However, the Court of Criminal Appeals reversed Powe's conviction and rendered a judgment for the defendant, 597 So.2d 720, finding insufficient evidence to prove the element of forcible compulsion under § 13A-6-61(a)(1). This Court granted the State's petition for the writ of certiorari.
The State raises one issue for our review: Whether the Court of Criminal Appeals erred in reversing and rendering a judgment in the instant case based upon a finding of insufficiency of the evidence to prove the element of forcible compulsion. Specifically, the State argues that the Court of Criminal Appeals' decision conflicts with that court's decisions in Pittman v. State, 460 So.2d 232 (Ala.Crim.App.1984), writ quashed, 466 So.2d 951 (Ala.1985), and Parrish v. State, 494 So.2d 705 (Ala.Crim.App.1985).
The record in this case reveals the following pertinent facts: The alleged victim, N.S., testified that Willie Powe is her natural father and that sometime during the month of May 1988, he sexually assaulted her. N.S. was 11 years old at the time of the alleged incident.
N.S. stated that the incident took place in her parents' bedroom when no one, other than N.S. and her father, was at home. N.S. testified that she and her father had *723 been arm wrestling while she was on the floor and her father was on the bed. She testified that at some point her father told her that it was time to take a nap and that he told her to lie on her mother's side of the bed. N.S. said she did as her father told her, while her father lay on the other side of the bed. Thereafter, N.S. said, Powe told her that he was cold, and she said he told her to get on top of him. Again, N.S. said, she obeyed her father. N.S. further testified that her father physically lifted her up on top of him. She stated that at this point she was lying lengthwise on top of her father.
N.S. testified that next her father unbuttoned and unzipped her pants, put his hand inside her panties, and touched her pubic hair. N.S. testified, on direct examination, that after her father touched her pubic hair, he then pulled down the hospital-type scrub pants that he was wearing and put his penis inside her vagina. Although this testimony conflicted somewhat with her response to certain questions on cross-examination, N.S. was recalled to the witness stand by the prosecution later in the trial and once again testified that her father did put his penis inside her vagina.
N.S. testified that after her father had put his penis inside her vagina, he then told her to get up and go and lock the door in the living room, which N.S. did. N.S. stated that she then went back to the bedroom, but that she did not get back on the bed with her father. Rather, N.S. stated, she combed her hair and got ready to go over to her best friend's house. N.S. testified that before she left her house, her father called her back into her mother's bedroom and told her that she was "acting like a baby."
N.S. testified that she had lain on top of her father for about two minutes and that it was about four or five minutes between the time that she got off her father and the time that she left the house. Although N.S. stated that her father did not expressly threaten her before or during the incident, she did testify that she was afraid of her father.
N.S. testified that she did not tell her best friend what had taken place because she did not think that her friend should know. However, some time after the incident occurred, N.S., while at school, wrote a note to a classmate telling her about the incident. The note was intercepted by two other classmates of N.S., who took the note to the school counselor. The counselor testified that after receiving the note she talked with N.S. about what she said her father had done to her. N.S. told the counselor that she had not told her mother about the incident because she was afraid it would cause her mother to hate her.
After talking with the school counselor about the incident, school officials reported the incident to the Birmingham Police Department. Thereafter, N.S. was interviewed by Sergeant Sue Boggan. Sergeant Boggan testified that when she talked with N.S., N.S. appeared very withdrawn and very fearful. She further stated that N.S. was extremely afraid of talking about what had happened and also about telling her mother about the incident. Sergeant Boggan stated that, based on her training and experience in dealing with abused children, she perceived N.S. as exhibiting characteristics consistent with those exhibited by other children that she had observed who were victims of sexual abuse.
After her interview with Sergeant Boggan, N.S. was taken by her mother to the Children's Hospital of Alabama, where she was examined by Dr. Christy Mulcahey. Dr. Mulcahey testified that she was a specialist in the area of obstetrics and gynecology. Dr. Mulcahey indicated that she was particularly interested in gynecologic problems in children and in teenagers and that as part of her training she had worked in a child abuse program in San Francisco, California.
Dr. Mulcahey stated that during her examination of N.S. in December 1988, N.S. told her that her father had "touched her all over" and had "put his penis in her vagina." Dr. Mulcahey testified that at the time of the examination, she wrote in her assessment of N.S. that N.S. gave a *724 very clear, fairly straight-forward history of abuse.
Dr. Mulcahey further testified that her physical examination of N.S. revealed nothing exceptional for "an 11- almost 12-year old who had already started her period." Dr. Mulcahey indicated that her examination revealed that N.S.'s hymenal tissue was still intact. However, Dr. Mulcahey cautioned that approximately three-fourths of children who have been sexually abused have normal physical examinations. She noted that the statistic is particularly true for children in N.S.'s age group because they are of an age where the hymenal tissue at the opening of the vagina "is more elastic and stretchy" than it would be at age four or five. Dr. Mulcahey further indicated that the increased elasticity of the vaginal tissue is the result of the female body's production of estrogen, which coincides with the onset of menstruation.
Audie Powe, N.S.'s mother, also gave testimony at the trial. She testified that she was Powe's wife and N.S.'s mother and that Powe was N.S.'s natural father. She further testified that she had initiated divorce proceedings against Powe, but that the divorce was not final at the time of trial.
Mrs. Powe testified that prior to the alleged incident between her daughter and her husband, her daughter had been a good student and had been active and well adjusted. Mrs. Powe further stated, however, that in the spring of 1988, her daughter's grades dropped and she began to get "rejectful in a lot of things." Mrs. Powe also testified that her daughter had been hospitalized on one occasion since the incident because she had become suicidal. Mrs. Powe testified that when she and her husband would "go to arguing, fussing ... and fighting," it made N.S. "real nervous and upset."
After the State rested its case, Powe testified in his own defense. Powe testified that he did not sexually assault his daughter and that the incident to which she testified never occurred. He further stated that his daughter had lied about the incident and had stuck to the lie after she was caught. He also testified that although he and his wife had argued in N.S.'s presence, he had never struck his wife or N.S. Powe denied ever threatening his wife or his daughter in any way.
The sole issue in this case is whether the evidence, as summarized above, is sufficient to support a conviction of first degree rape. In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). Furthermore, a judgment of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust. Jackson v. State, 516 So.2d 726 (Ala.Crim.App.1985).
Section 13A-6-61(a)(1), Ala.Code 1975, the provision under which Powe was convicted, provides that "[a] male commits the crime of rape in the first degree if ... [h]e engages in sexual intercourse with a female by forcible compulsion." "Sexual intercourse" is defined in § 13A-6-60(1) as occurring "upon any penetration, however slight." Furthermore, § 13A-6-60(8) defines "forcible compulsion" as "[p]hysical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person."
In the present case, there is no evidence that N.S. was overcome by her father's physical force. Neither is there evidence of any express threat by Powe. However, the State argues that the evidence, taken as a whole, is sufficient to show an implied threat of such a nature as to support a conviction for first degree rape. The State bases its argument on Pittman v. State, 460 So.2d 232 (Ala.Crim.App.1984), writ *725 quashed, 466 So.2d 951 (Ala.1985), and Parrish v. State, 494 So.2d 705 (Ala.Crim.App.1985). These cases present the general notion that in charges involving sex crimes against children the force required to consummate the crime differs from the force required to consummate those crimes against a mature female.
In Pittman, the Court of Criminal Appeals held that "[i]t is clear that the force required to consummate rape in the first degree is necessarily relative. The force required to consummate the crime against a mature female is not the standard for application in a case in which the alleged victim is a child." 460 So.2d at 235. The Pittman court concluded that the evidence in that case was sufficient to satisfy the forcible compulsion element of rape in the first degree. Id. The evidence consisted mainly of the 13-year-old victim's testimony that she initially refused to have intercourse with her stepfather, the defendant, but that she eventually cooperated after she was expressly threatened. 460 So.2d at 234-35.
In Parrish, the Court of Criminal Appeals addressed a sufficiency-of-the-evidence argument with regard to a first degree sexual abuse conviction. The first degree sexual abuse statute, like the first degree rape statute, requires a finding of forcible compulsion. See § 13A-6-66(a)(1), Ala.Code 1975.
The evidence in Parrish showed that the defendant, who was the boyfriend of the victim's mother, touched the 12-year-old victim's private parts while the victim pretended to be asleep on a bed in the appellant's house. 494 So.2d at 706-09. The victim in Parrish testified that the defendant held her down by putting his foot over her leg and that when she pretended to wake up, the defendant left the room. 494 So.2d at 707. In affirming the conviction, the Parrish court held that the mere fact that a 12-year-old girl makes no effort to resist a sexual confrontation does not negate the inference that sufficient legal force existed. 494 So.2d at 709. The court went on to hold that when a sufficiency-of-the-evidence issue is raised in cases stemming from an alleged sexual assault of minors, questions involving resistance and consent must be viewed in the context of the age of the assaulted minor. 494 So.2d at 710. Applying a totality-of-the-circumstances test, the court concluded that the record revealed a sufficient evidentiary showing on the forcible compulsion element of the crime charged. 494 So.2d at 713.
Although the Parrish court ultimately held that the element of forcible compulsion was satisfied by the fact that the victim was held down by the defendant and by the fact that the victim stated that she had blood in her panties after the assault, other factors that the court considered significant were: (1) the victim's age and the fact that the attack was perpetrated by the boyfriend of the victim's mother; (2) that the defendant, who had been drinking and smoking marijuana, got into bed with the victim; (3) that the victim testified that the defendant had sexually molested her on another occasion but that her mother had ignored her when she tried to tell her about the assault; and (4) that the victim was in a particularly vulnerable situation because the assault took place at the defendant's residence. 494 So.2d at 710. The court, in Parrish, further noted that the jury had the opportunity to consider factors such as the relative size of the parties, their ages, and their social differences. Id.
A third Court of Criminal Appeals case cited by the parties is Rider v. State, 544 So.2d 994 (Ala.Crim.App.1989), which was relied on by the court below in its reversal of Powe's conviction. In Rider, as in Pittman and in Parrish, the defendant's primary argument was that the evidence was insufficient to support a finding of forcible compulsion. 544 So.2d at 994. The defendant in Rider, the 27-year-old stepfather of the alleged victim, a child, was convicted of sexual abuse in the first degree and sodomy in the first degree. Id. The child testified that the defendant forced her hand onto his penis and that the defendant touched her breasts and her vagina. Id. The child further testified that the defendant performed oral sex on her and asked her to perform oral sex on him. Id. She testified that the touching began sometime *726 after her 9th birthday and continued until around her 12th birthday. 544 So.2d at 995. When the prosecutor asked the child if she "voluntarily" performed oral sex acts on the defendant, she did not answer. Id. She testified that she tried to "mind" her stepfather because she "liked the way he treated her, like she was his only child." Id. She further stated that the defendant had never done anything to make her afraid of him and that she was not afraid of him. Id. In reversing the defendant's conviction, the Rider court concluded that there was no evidence that the child made any protest or complaint to the defendant sufficient to indicate that her earnest resistance was overcome. Id. Applying the totality-of-the-circumstances standard, the court found that the evidence was insufficient to support a finding of either physical force or a threat, express or implied. 544 So.2d at 996.
After reviewing the Court of Criminal Appeals' decisions in Pittman, Parrish, and Rider, we find the facts of each to be distinguishable from the facts presented in the instant case. In Pittman, there was evidence that the victim was expressly threatened, and that evidence was held to be sufficient on the element of forcible compulsion. In Parrish, there was evidence that physical force was used to restrain the victim, and that evidence was held to be sufficient evidence on the element of forcible compulsion. Finally, in Rider, there was neither a threat of any kind nor the use of any physical force. Furthermore, there was nothing in the record to show that the sex acts were anything other than voluntary.
The record in this case reveals no evidence that physical force was used on the victim or that the victim was expressly threatened. Therefore, we find the Court of Criminal Appeals' decisions in Pittman and Parrish, since those cases, respectively, concern evidence of physical force and evidence of an express threat, to be inapplicable under the facts of the present case. Furthermore, we distinguish the Rider case because we find that the evidence in the present case, unlike the evidence in Rider, merits an analysis of whether, viewing the totality of the circumstances, a jury could properly find that an implied threat was made against the victim sufficient to satisfy the element of forcible compulsion. Such an analysis, however, presents an issue of first impression for the appellate courts of this state; therefore, we look to other jurisdictions for guidance in deciding this case.
One of the most persuasive cases that we discovered in our research of the issue presented in this case is State v. Etheridge, 319 N.C. 34, 352 S.E.2d 673 (1987). In Etheridge, the North Carolina Supreme Court considered whether the evidence was sufficient to support the defendant's conviction of sodomy in connection with the sexual assault of his minor son. 319 N.C. at 36-37, 352 S.E.2d at 675. The record in Etheridge revealed no evidence that the defendant had used physical force or that he had coerced his son's cooperation by the use of express threats. Id. However, the Etheridge court affirmed the conviction, holding that a child's general fear of a parent can suffice as the force necessary to commit a forcible sexual assault. 352 S.E.2d at 682. The Etheridge court, in holding that constructive force could be reasonably inferred from the circumstances surrounding the parent-child relationship in that case, initially noted:
"Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose."
319 N.C. at 47, 352 S.E.2d at 681. The Etheridge court further observed that the incidents of abuse in that case all occurred while the victim lived as an unemancipated minor in the defendant's household, subject to the defendant's parental authority. The court then stated:
"The child's knowledge of his father's power may alone induce fear sufficient *727 to overcome his will to resist, and the child may acquiesce rather than risk his father's wrath. As one commentator observes, force can be understood in some contexts as the power one need not use. Estrich, Rape, 95 Yale L.J. 1087, 1115 (1986).
"In such cases the parent wields authority as another assailant might wield a weapon. The authority itself intimidates; the implicit threat to exercise it coerces."
319 N.C. at 48, 352 S.E.2d at 681-82.
The Supreme Court of North Carolina, in reaching its decision in Etheridge, limited its prior decision in State v. Alston, 310 N.C. 399, 312 S.E.2d 470 (1984), and overruled Alston's progeny, State v. Lester, 70 N.C.App. 757, 321 S.E.2d 166 (1984), aff'd mem., 313 N.C. 595, 330 S.E.2d 205 (1985). In Alston, the court held that an adult victim's general fear of an attacker based on knowledge of prior acts of violence by the attacker was insufficient to show the force necessary to uphold a conviction of rape. The Etheridge court, however, limited Alston to sexual assault cases involving adults. 319 N.C. at 46-47, 352 S.E.2d at 681. In Lester, the North Carolina Court of Appeals decision had interpreted Alston as holding that evidence of a 15-year-old victim's general fear of her father was insufficient to support her father's conviction for rape. In overruling Lester, the Etheridge court disavowed Lester as misapplying the Alston "general fear" rationale to a case of intrafamilial sexual abuse. Id.
The Supreme Court of North Carolina's ruling in the Etheridge case was regarded in that state as a positive step toward dealing more effectively with intrafamilial sexual abuse cases. See Note, State v. Etheridge: The General Fear Theory and Intrafamilial Sexual Assault, 66 N.C.L.Rev. 1177 (1988). As one commentator noted:
"A defendant who plays a parental role in the victim's world can greatly influence and dominate that world. He or she is the victim's authoritarian, enforcing that authority through the role of disciplinarian. Etheridge recognizes that in any order given by a parent these dual roles create an implied threat of some sort of disciplinary action.... The victim is young, inexperienced, and perhaps ignorant of the `wrongness' of the conduct. The child may submit because he does not know he can resist or because he assumes the conduct is acceptable."
Id. at 1184-85.
A second case that we find persuasive in our analysis of the issue in the present case is the Supreme Court of Pennsylvania's decision in Commonwealth v. Rhodes, 510 Pa. 537, 510 A.2d 1217 (1986). The defendant in Rhodes was convicted of forcibly raping his neighbors' eight-year-old daughter. 510 Pa. at 539-44, 510 A.2d at 1218-20. The evidence revealed that the defendant saw the child at a playground after school and asked her to walk to a nearby abandoned building with him; there, he had sexual intercourse with her. Id. There was no evidence that the child made any effort to resist or repel the defendant or that the defendant used physical force to compel the child to submit to sexual intercourse. Id. The superior court reversed the conviction, finding insufficient evidence on the element of forcible compulsion. Id. The Supreme Court of Pennsylvania, however, reversed the superior court's ruling and reinstated the conviction. 510 Pa. at 564-65, 510 A.2d at 1231.
In its opinion, the Supreme Court of Pennsylvania first noted:
"In common usage ... the phrase `forcible compulsion' clearly connotes more than the exercise of sheer physical force or violence.... The phrase also connotes the act of using superior forcephysical, moral, psychological, or intellectualto compel a person to do a thing against that person's volition and/or will."
510 Pa. at 553, 510 A.2d at 1225. The court further noted that the degree of force required to constitute rape is relative and depends upon the facts and particular circumstances of the case. 510 Pa. at 554-56, 510 A.2d at 1226. The court went on to *728 hold that the term "forcible compulsion," as used in Pennsylvania's rape statute, includes not only physical force or violence but also moral, psychological, or intellectual force used to compel a person to engage in sexual intercourse against that person's will. Id.
The Rhodes court then set out to determine whether, considering the totality of the circumstances, the evidence supported a finding that the defendant had used forcible compulsion. Id. The court noted that significant factors to be weighed in that determination would include
"the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress."
510 Pa. at 556, 510 A.2d at 1226. The court further noted, however, that this list of factors is by no means exclusive. Id.
After reviewing the evidence in the case, the Rhodes court found the evidence sufficient to demonstrate beyond a reasonable doubt that the defendant had engaged in sexual intercourse with the eight-year-old child by the threat of forcible compulsion. 510 Pa. at 556-58, 510 A.2d at 1227. In reaching such a conclusion, the Rhodes court stated:
"There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion ... derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ... without the use of physical force or violence or the explicit threat of physical force or violence."
510 Pa. at 557, 510 A.2d at 1227.
Although there is authority from other jurisdictions refusing to apply reasoning similar to that employed in State v. Etheridge, 319 N.C. 34, 352 S.E.2d 673 (1987), and Commonwealth v. Rhodes, 510 Pa. 537, 510 A.2d 1217 (1986), see e.g., McQueen v. State, 423 So.2d 800 (Miss.1982), we find the reasoning applied in Etheridge and Rhodes to be the most logical. Therefore, applying the reasoning of Etheridge and Rhodes, and taking into consideration the totality of the circumstances as outlined in the record in this case, we conclude that the evidence in the present case is sufficient to support the jury's finding that Willie James Powe had sexual intercourse with his daughter, N.S., through the use of forcible compulsion.
Powe was the natural father of N.S. At the time of the incident, Powe was married to N.S.'s mother and resided in the household with N.S. and her mother. Powe's arrest records indicate that at the time of the incident, he was approximately 40 years old, while N.S., on the other hand, was 11 years old. The incident between N.S. and her father occurred in her parents' bedroom while no one else was at home. Furthermore, N.S. indicated that she was afraid of her father. From this evidence, we conclude that a jury could reasonably infer that Powe held a position of authority and domination with regard to his daughter sufficient to allow the inference of an implied threat to her if she refused to comply with his demands.
At this point, however, we note that our holding in this case is limited to cases concerning the sexual assault of children by adults with whom the children are in a relationship of trust. The reason for the distinction between cases involving children as victims and those involving adults as victims is the great influence and control that an adult who plays a dominant role in a child's life may exert over the child. When a defendant who plays an authoritative role in a child's world instructs the *729 child to submit to certain acts, an implied threat of some sort of disciplinary action accompanies the instruction. If the victim is young, inexperienced, and perhaps ignorant of the "wrongness" of the conduct, the child may submit to the acts because the child assumes that the conduct is acceptable or because the child does not have the capacity to refuse. Moreover, fear of the parent resulting from love or respect may play a role as great as or greater than that played by fear of threats of serious bodily harm in coercing a child to submit to a sexual act. Note, State v. Etheridge: The General Fear Theory and Intrafamilial Sexual Assault, 66 N.C.L.Rev. 1177, 1185 (1988).
One commentator cited the statistic that about 80% of the reported cases of child sexual assault occur within what are traditionally referred to as affinity systems, e.g., immediate family, relatives, close friends, and neighbors. Elizabeth Ward, Rape of Girl-Children by Male Family Members, 15 Austl. & N.Z. J. Criminology 90 (1982). Of the 80% of child sexual assault cases occurring within affinity systems, about 50% of the offenders are the natural fathers of the victims. Id.
"Rape by a father creates in the victims a deep split. They feel powerlessness and hate their own passivity, but have absolutely no means of doing or saying anything to the very person who normally teaches the difference between what is right and what is wrong. If a person you look to to tell you what is right does something that feels wrongespecially in relation to your own bodythen it must be you who is out of phase.
"....
"The `familiar father' and the [rapist] are, separately and together, an authority figure. As such, he has the authority that parents and adults have over children generally; in this case, he also has the `authority' that a man has over a female in a rape situation. To the dynamics of `ordinary' rape, in which a man... threatens or forces a woman to have sexual intercourse, we have to add the dynamics operating between a Father-as-parent and his girl-child, in order to understand the powerlessness (which is read as passivity) of the girl-child victim."
Id. at 96-97. (Emphasis in original.)
Our holding in this case establishes a mechanism by which the unique relationship between children and the adults who exercise a position of domination and control over them may be taken into consideration in determining whether the element of forcible compulsion has been established. To hold otherwise would be to require a child to be mangled, to see a deadly weapon, or to hear the actual utterance of specifically threatening words before a jury would be authorized to discern a rational fear of violence. Making these criteria absolute would be ignoring reality. See McQueen v. State, 423 So.2d 800 (Miss.1982) (Hawkins, J., dissenting).
In view of the foregoing, we reverse the judgment of the Court of Criminal Appeals and remand the cause for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
MADDOX and ALMON, JJ., dissent.
ALMON, Justice (dissenting).
As the Court of Criminal Appeals has noted in its opinion, the evidence in this case simply does not support a finding of "forcible compulsion" as that term is defined in § 13A-6-60(8), Ala.Code 1975:
"Physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person."
I see no evidence of physical force that overcame "earnest resistance" or of any threat that placed the daughter "in fear of immediate death or serious physical injury." Thus, I agree with the Court of Criminal Appeals that Powe is not guilty of first degree rape by forcible compulsion, the crime defined by § 13A-6-61(a)(1) and the crime for which he was indicted and convicted.
However, the evidence clearly would support a finding that Powe is guilty of first *730 degree rape by "sexual intercourse with a female who is less than 12 years old," the crime defined by § 13A-6-61(a)(3). Thus, this is purely a case of a defective indictment. See Rider v. State, 544 So.2d 994 (Ala.Crim.App.), cert. denied, 544 So.2d 997 (Ala.1989), in which the Court of Criminal Appeals similarly found that the evidence did not support a finding of "forcible compulsion" but that it would have supported a conviction if the indictment had been based on the victim's being less than 12 years old.
Now, to correct the prosecutor's mistake, this Court has changed the meaning of "forcible compulsion." The Court's strained interpretation of "forcible compulsion" to make up for the error committed by the prosecutor is a further error with much further-reaching consequences. The necessity of following the clear language of statutes defining criminal offenses should persuade the Court to make the hard decision of sustaining the reversal by the Court of Criminal Appeals. The Court of Criminal Appeals has already made the difficult, but correct, decision to reverse the conviction of a man who, as a jury could find under a proper indictment and the evidence presented at trial, has committed a sexual offense against his minor daughter. Powe is not guilty of the crime for which he has been indicted and convicted; the Court's understandable feeling that he should be punished should not cloud its judgment and lead to a distortion of the law.
Maddox, J., concurs.