BOWEN, Presiding Judge,
dissenting.
I dissent from the majority’s assertion that “[t]he state failed to present even the slightest bit of evidence that the appellant used any physical force or threats of immediate death or serious physical injury to compel S.B. to have sexual intercourse with him in August or September 1981.”
The evidence established that the victim was seven years old when her mother married the appellant. During direct examination, the victim testified that the appellant, who had been a deputy sheriff, began sexually abusing her when she was between 11 and 12 years old and that he began having intercourse with her when she was 16. On cross-examination, the victim stated that the appellant had intercourse with her on a regular, if not daily basis, for about four years thereafter. In the spring of 1981, the appellant, the victim’s mother, and the victim’s half-sister moved to Phenix City, Alabama, while the victim remained in Tallahassee, Florida, in order to complete her college term. At the end of the term, the victim joined the appellant and her mother and sister in Phenix City. The victim testified that the appellant raped her in a bedroom of the house in Phenix City in August or September 1981. The victim, who was 20 or 21 at the time, stated that this rape occurred during the day when her mother was at work:
“A. So [my mother] was gone and he told my sister to go out and play, and he made me come in the bedroom with him.
“Q. Well, how did he make you do that, S.?
“A. Because anytime I would tell him I didn’t want him to do that, a couple of times he hit me and a lot of times he might not do anything then, but then he would start being angry with me and angry with my mom and my sister and they wouldn’t know why he was angry. But sometimes he would tell be that he would see me burn in hell before he would allow me to break up the family and that by not letting him do what he wanted to, that I was breaking up the family.
“Q. Were you afraid of him?
“A. Yes, I was.
“Q. When he told you to go into the bedroom that time in Phenix City, what happened?
“A. I did what he told me to do, and he made me take my clothes off and he didn’t even take his clothes off, he just unzipped his pants and then he raped me.
[[Image here]]
“Q. 'Did you want to do that?
“A. No.” R. 62-63.
On cross-examination of the victim, the following occurred:
“Q. Ms. B., on the occasion in Russell County that you and the Defendant had sexual intercourse, did he use any weapon to threaten you on that occasion?
“A. No, sir.
“Q. Did he use anything to restrain you on that occasion?
“A. No, sir.
“Q. Was this occasion similar to occasions which had occurred in Florida?
“A. Yes, sir.” R. 81-82 (emphasis added).
The appellant testified in his own defense. He denied abusing the victim before she was 16 and denied having intercourse with her at any time in Alabama. He stated that he and the victim had engaged in a consensual relationship for approximately four and one-half years, beginning when she was 16 and ending when he and the victim’s mother moved to Alabama. According to the appellant, during their consensual relationship, he and the victim engaged in sexual intercourse “[a]lmost every day.” R. 106.
In Powe v. State, 597 So.2d 721 (Ala.1991), the Alabama Supreme Court held that the element of forcible compulsion could be established by virtue of the relationship of a child victim with the defendant charged with a sex crime involving forcible compulsion. *1259 There was no evidence of physical force or express threats in Powe — the victim simply testified that she did what the defendant told her to do. In view of the evidence that the defendant was the victim’s natural father, that the victim resided with the defendant, that the defendant was some 30 years older than the victim, that the incident occurred when the victim was home alone with the defendant, and that the victim indicated that she was afraid of the defendant, the Supreme Court “conelude[d] that a jury could reasonably infer that [the defendant] held a position of authority and domination with regard to his daughter sufficient to allow the inference of an implied threat to her if she refused to comply with his demands.” Powe, 597 So.2d at 728 (emphasis added). Powe “established] a mechanism by which the unique relationship between children and adults who exercise a position of domination and control over them may be taken into consideration in determining whether the element of forcible compulsion has been established.” Id. at 729.
In the present case, the victim testified to long-term abuse, beginning when she was 11 or 12 years old and obviously a “child.” In view of this fact, the trial court, relying on Powe, instructed the jury that the parent/child relationship between a victim and an accused could be considered in determining whether forcible compulsion had been established. The court also instructed the jury that it could consider the following factors in determining whether the alleged act of intercourse in Phenix City was accomplished by forcible compulsion:
“First, you could consider the respective ages of S.B. and Clifton David Howell. You could consider their respective mental and physical conditions. Thus, you could consider the mental and physical condition of S.B. and the mental and physical condition of Clifton David Howell.
“You can consider the atmosphere and physical setting in which the incident was claimed to have taken place. You can consider the extent to which Clifton David Howell may have been in a position of authority or domination or custodial control over S.B. in August or September 1981. You may consider whether S.B. was under duress at that time, and you may consider any history of past conduct or sexual activity between S.B. and Clifton David Howell.” R. 159-60.[1]
Defense counsel objected to these and other charges based on Powe, pointing out that the Powe victim was only 11 years old at the time the charged offense occurred and that the victims in the cases relied on by Powe were also young children. The trial court responded:
“It is my opinion and the reason I instructed on forcible compulsion in the way that I did, you are correct, those cases and the Powe case address the situations involving charges of rape in which the alleged victim would be a'female child, 15 or 12. I believe Powe was 12_ Eleven or twelve. The Powe ends — the majority opinion runs pretty close that they went through those criteria or are making the criteria or the requirement of there being some type of deadly weapon used or the person actually hearing threatening words before a jury could find a rational fear of violence would be to ignore reality.
“I understand the point that you’re making. The Powe case does not address the situation completely that we have here in which there is evidence of past sexual conduct by a stepparent involving a child starting at some 9 or 10 years, and there is evidence that that continued until age 19 or 20.
“I think that the law should consider the situation that if that sexual activity did take place, then what about — the Powe case and other cases cited in there, realize the state of the mind of the child. When does that state of mind or the situations recognized by Powe cease to exist? I . think that it’s for the jury to determine whether or not there was any state of mind of [the victim] back in 1981 which would *1260 have — which was her state of mind at that time and which was the result of past sexual activity and not of her own free choosing as recognized by Powe. If it’s possible for a child to be subjected to forcible compulsion as recognized in Powe, when does that cease? I don’t think it would automatically cease upon a child’s 16th birthday or a child’s 18th birthday or 19th or 20th birthday necessarily. I think it would depend upon all of those circumstances that are set out.
“Powe doesn’t particularly address past history or history of past conduct or activity. Yet, I think it’s implicit throughout their discussion of the cases on that, and I think it’s also a proper factor to consider, under all of the circumstances, whether there was any voluntary intercourse or whether it was a continuation of past domination or subjecting a child in the past....
[[Image here]]
“... If a factor for the jury to consider — perhaps the jury could determine at some point in time that there was such a domination or all those other factors that it would be forcible compulsion; that at some point in time there’s a different rule for mature adults. And I think you have to look at maturity from the particular alleged victim’s standpoint and that person’s psychological being, emotional being.” R. 168-71 (emphasis added).
Like the trial judge, I am of the opinion that the outer boundaries of Powe are not clear. However, I also agree with the trial judge that Powe is applicable in this particular ease. The victim testified that she had been abused since the age of 11 or 12. She also clearly testified, unlike the victim in Powe, that the appellant had used physical force (“a couple of times he hit [her]”) and had threatened her (“he would tell [her] that he would see [her] burn in hell”[2] if she did not have sex with him) in order to have intercourse with her in the past. (I am even of the opinion that, while somewhat tenuous, the jury could also have inferred from the victim’s above-quoted testimony on cross-examination that, although the appellant did not have a weapon or restrain her physically, he did actually threaten her on the occasion that was the basis for this prosecution.) It should be noted that the appellant admitted that he had engaged in sexual intercourse with the victim, his stepdaughter, “almost every day” for over four years. Furthermore, not only was the appellant in a position of authority and domination over the victim because he was her father, he was also a deputy sheriff in Florida and subsequently the chief of police of Phenix City, Alabama. Under the circumstances of this case, I agree, with the trial court that it was for the jury to decide whether the relationship of the parties and the alleged prior abuse, intercourse, physical force, and threats established that the August or September 1981 act of intercourse was accomplished by forcible compulsion. The evidence is at least minimally sufficient to support the jury’s conclusion that it was.

. The trial court did, immediately after this last statement, exhort the jury to "[r]emember that the accused is not on trial here for any acts which may have occurred in the State of Florida. Rather, he is on trial here for a claimed act that occurred — it is claimed in the house ... in Russell County, Alabama, in August or September of 1981." R. 160.

. In construing similar language contained in letters written by a defendant convicted of sending threatening letters through the United States mail, the Eighth Circuit Court of Appeals stated: "The letters contain a determination or intent to injure presently or in the future. The question of whether the language constitutes a threat [wa]s an issue of fact for the jury.” Martin v. United States, 691 F.2d 1235, 1240 (8th Cir.1982) (citations omitted), cert. denied, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983).