STUART, Justice
(dissenting).
I would reverse the judgment of the Court of Criminal Appeals; therefore, I respectfully dissent.[1]
*284 My review of the record establishes that the Court of Criminal Appeals invaded the province of the jury when it concluded that the State failed to present sufficient evidence to sustain the conviction of Dwayne Anthony Collier, Sr., for first-degree hindering prosecution. Specifically, the record includes sufficient evidence showing that, at the time Dwayne provided criminal assistance to his son, Dwayne Anthony Collier, Jr. (hereinafter referred to as “Anthony”)) Anthony was not in the custody of law-enforcement officers and showing that Dwayne’s misrepresentations to law-enforcement officers prevented law-enforcement officers from apprehending Anthony.
Dwayne was indicted for first-degree hindering prosecution, a violation of § 13A-10-43(a), Ala.Code 1975. Specifically, the indictment charged that Dwayne
“did, with the intent to hinder the apprehension, prosecution, conviction or punishment of [Anthony], hinder the apprehension, prosecution, conviction or punishment of [Anthony], for an offense constituting a Class A or B felony, to-wit: Murder, in rendering criminal assistance by concealing the shotgun used to kill Edward Dickinson and/or falsely reporting to law enforcement that he shot Edward Dickinson, in violation of § 13A-10-43, [Ala.Code 1975].”
Section 13A-10-43(a), Ala.Code 1975, defines first-degree hindering prosecution as follows:
“A person commits the crime of hindering prosecution ... if with the intent to hinder the apprehension, prosecution, conviction or punishment of another for conduct constituting a murder ..., he renders criminal assistance to such person.”
“Criminal assistance” is defined in § 13A-10-42:
“[A] person renders ‘criminal assistance’ to another if he:
[[Image here]]
“(4) Prevents or obstructs, by means of force, deception or intimidation, anyone except a trespasser from performing an act that might aid in the discovery or apprehension of such person; or
“(5) Suppresses, by an act of concealment, alteration or destruction, any physical evidence that might aid in the discovery or apprehension of such person.”
(Emphasis added.)
The Court of Criminal Appeals held:
“Under the language of the indictment, and pursuant to §§ 13A-10-42 and 13A-10-43, Dwayne’s culpability could stem only from rendering criminal assistance in a manner that prevented Anthony’s discovery or apprehension. Once Anthony was in custody, Dwayne could not have prevented investigators from discovering or apprehending him. Because Dwayne made his false statements after Anthony was apprehended, and because Dwayne’s moving of the gun into the woods did not prevent the discovery or apprehension of Anthony, the State failed to present a prima facie case of hindering prosecution, as alleged in the indictment, and the trial court should have granted Dwayne’s motion for a judgment of acquittal.”
Collier v. State, 212 So.3d 268, 282 (Ala.Crim.App.2015)(emphasis added).
The Court of Criminal Appeals recognized that “Black’s Law Dictionary defines ‘apprehension’ as ‘[s]eizure in the name of the law; arrest.’ Black’s Law Dictionary 122 (10th ed.2014).” Collier v. State, 212 So.3d at 279. In California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), the United States Supreme Court held that, when determining whether a person is “in custo *285 dy,” “the ultimate inquiry is simply whether there is a ‘formal arrest or restraint of freedom of movement’ of the degree associated with a formal arrest.” In California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the United States Supreme Court held that “[a]n arrest requires either physical force ... or, where that is absent, submission to the assertion of authority.”
The evidence establishes that, when law-enforcement officers arrived at the crime scene, Dwayne was holding Anthony on the ground. The evidence further demonstrates that when emergency medical services (“EMS”) arrived the technicians tended to Anthony’s medical needs, placed him on a gurney, put him in an ambulance, and drove him to a hospital for additional treatment. While Anthony was being treated by EMS, Dwayne talked with law-enforcement officers and, when he told them he had shot Dickinson, the law-enforcement officers Mirandized[2] him. The officers then placed Dwayne in a patrol car, and, later that night, Dwayne was incarcerated.
The Court of Criminal Appeals reasoned that, because Dwayne “restrained” Anthony at the crime scene and because Deputy Troy Fisher of the Mobile County Sheriffs Department testified that Anthony was “secured” in an ambulance, Anthony had been taken into custody at the time Dwayne made his false statements. I disagree with the Court of Criminal Appeals’ conclusion that the record establishes that Anthony had been apprehended when Dwayne made his false statements to the law-enforcement officers that he, not Anthony, shot Dickinson. Admittedly, the evidence shows unequivocally that, at the time Dwayne made the false statements to law-enforcement officers that he, not Anthony, had shot Dickinson, law-enforcement officers knew Anthony’s physical location and perhaps suspected that Anthony also may have participated in the murder. However, nothing in the record establishes that Anthony was arrested, i.e., “seiz[ed] in the name of the law” before Dwayne made his false statements. Indeed, a fair reading of the entire record demonstrates that Dwayne was not restraining Anthony at the crime scene so that law-enforcement officers could take Anthony into custody; rather, he was restraining Anthony because Anthony had sustained a head injury.
Additionally, unlike the evidence showing that law-enforcement officers had Mir-andized Dwayne and “secured” him in a patrol car, which created the inference that Dwayne was in the custody of law-enforcement officers, the evidence indicating that EMS had placed Anthony on a gurney, had put him in an ambulance, and had driven him to a hospital for additional medical treatment creates the inference that Anthony was in need of immediate medical attention, not that he was being restrained by law-enforcement officers. Evidence indicating that Anthony was “secured” in an ambulance by EMS, in light of the need to immobilize him to prevent additional head trauma, does not create an inference that he was “in custody” of law-enforcement officers.
Further evidence that the law-enforcement officers did not take Anthony into custody or arrest him before Dwayne made his false statements is provided by David Johnston, Dwayne’s neighbor, who testified that, on the morning after the incident, Anthony was released from the hospital and that Anthony and his mother came by Johnston’s house. In contrast, the evidence established that the morning after the incident Dwayne remained incar *286 cerated. Although not evidence, Anthony’s counsel in argument addressing the suppression of certain photographs of Anthony conceded that Anthony was not taken into custody at the crime scene when he stated that “[t]here [are] a number of photographs taken of [Anthony], several days—actually a couple of weeks after this incident, after he was released from the hospital and arrested.” Furthermore, when the prosecutor argued that the evidence did not support the offense of obstructing governmental operations, see § 13A-10-2, Ala.Code 1975,[3] as a lesser-included offense of first-degree hindering prosecution because the offense of obstructing governmental operations does not apply to the “obstruction, impairment or hindrance of the making an arrest,” Dwayne’s counsel responded that the facts supported the charge, reasoning that Dwayne did not hinder the actual arrest of Anthony because Anthony “was subsequently arrested.” Based on my review of the record, I cannot conclude that the record establishes that Anthony, at the time Dwayne made his misrepresentations to law-enforcement officers, was in the custody of law-enforcement officers, and, because the record does not demonstrate that Anthony had been apprehended before Dwayne made his false statements to law-enforcement officers, the State presented sufficient evidence that Dwayne’s misrepresentations to law-enforcement officers prevented law-enforcement officers from immediately placing Anthony in custody for Dickinson’s murder. Cf. Ex parte Burton, 783 So.2d 887, 891 (Ala.2000)(holding that a defendant must make the false representation preventing law-enforcement officers from “performing an act that might have aided in the ‘discovery or apprehension’” of the person being criminally assisted before the person being criminally assisted is arrested to sustain a conviction for hindering prosecution); and State v. Werdell, 340 Or. 590, 136 P.3d 17 (2006)(holding that a defendant lacks the requisite intent to prevent the apprehension of the person being criminally assisted when at the time of the defendant’s conduct the person being criminally assisted is in custody).
Here, the trial court charged the jury that “a person renders criminal assistance to another if he prevents or obstructs by means of deception anyone from performing an act that might aid in the discovery or apprehension of another pei’son.” Viewing the evidence in a light most favorable to the State, as we are required to do, see Powe v. State, 597 So.2d 721, 724 (Ala.1991), I believe the State presented sufficient evidence from which the jury could infer that Dwayne committed first-degree hindering prosecution. Therefore, I respectfully dissent.
BOLIN, J,, concurs.

. Because I do not find the Court of Criminal Appeals' analysis regarding the interpretation of the term "discovery” as used in § 13A-10-42, Ala.Code 1975, determinative of whether the State presented sufficient evidence to sustain a conviction for first-degree hindering prosecution, I offer no comment on the propriety of that analysis.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Section 13A-10-2, Ala.Code 1975, provides:
"(a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interferences or by any other independently unlawful act, he:
"(3) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or
“(2) Intentionally prevents a public servant from performing a governmental function.
"(b) This section does not apply to the obstruction, impairment or hindrance of the making of an arrest.”