HARRIS, Judge.
Appellant was convicted of the crime of bribery to commit arson and sentenced to eight years in the penitentiary. Throughout the trial proceedings in the Circuit Court of Jackson County he was represented by counsel of his own choice and at arraignment pleaded not guilty. After conviction he gave notice of appeal and trial counsel represents appellant on this appeal.
According to the State’s evidence this prosecution stemmed from an investigation initiated by Mr. Donald Barrett, Special Agent with the U.S. Treasury Department, Bureau of Alcohol, Tobacco, and Firearms Division. Mr. Barrett had been a criminal Investigator with the Treasury Department for sixteen years. According to Mr. Barrett’s testimony appellant had been dealing in moonshine whiskey for over thirty years. Mr. Barrett knew appellant by sight and also knew his voice as he worked on the case that brought about a federal conviction of appellant for violating the law in dealing with non-tax-paid whiskey. After appellant served his sentence Mr. Barrett thought he was again engaged in the business of selling moonshine whiskey and he got the Government to employ one Billy Ray Fennell as a special employee to work with him in trying to catch appellant. The testimony for the State tended to show that at one time Billy Ray Fennell had hauled illegal whiskey for appellant. Fennell was paid by the day when he worked with Mr. Barrett.
The mode of operation involved this special employee, Billy Ray Fennell, driving an old unmarked Chevrolet automobile owned by the Government to various known or suspected dealers in illegal liquor traffic and attempting to make a purchase. Mr. Barrett would conceal himself in the trunk of the old Chevrolet and listen to these conversations to gather evidence.
The first contact that Barrett and Fen-nell had with appellant was August 6,1974, at appellant’s residence where Barrett had been on numerous occasions. Fennell told appellant that he was back in the whiskey business and wanted to buy some and appellant told him he did not have any whiskey at that time but to contact him later and he would try to locate some. They made four different trips to appellant’s home but were told each time that appellant had not been able to locate any whiskey.
On one of these trips appellant said to Fennell, “That job I talked to you about last year, I would still like for you to do it if you want to,” and Fennell said, “Yes, he would.” Appellant asked Fennell if he still wanted $500.00 and Fennell said yes. Appellant said, “I want Lester Cornelison’s barns burned; he has three of them.” Fen-nell told appellant that it would take another $100.00 as he had to have another boy to help him and “this boy doesn’t know who you are.” Appellant said he didn’t want to know him and said, “That would be three barns and $200.00 apiece.”
Barrett further testified that appellant stated that Lester Cornelison had been helping Barrett and had helped Barrett catch him and another member of his family and sent them to the penitentiary. Barrett stated that at no time did Fennell bring up the subject of burning bams but that appellant initiated the conversation on each and every occasion that he was present in the trunk of the automobile. The last meeting was on August 11, 1974 when appellant told Fennell that he wanted Corneli-son burned out because he was watching his moonshine operation and had gotten him *1330 caught previously and offered Fennell $500.00 to do the job and that it was on this occasion that Fennell told him it would take another $100.00 making the total of $600.00 for all three of Mr. Cornelison’s barns. Barrett stated that appellant and Fennell planned at this time to meet again and discuss the details of the burning.
Following this last meeting Barrett reported the bribery offer of appellant to Mr. Irby Lyles, Deputy State Fire Marshal, and to the Jackson County District Attorney. Mr. Lyles then contacted Fennell concerning the bribery offer of appellant to pay Fennell $600.00 to burn the three barns belonging to Mr. Cornelison. Mr. Barrett further testified that Mr. Cornelison had never helped him in any manner concerning appellant’s illegal liquor traffic nor had he ever furnished him any information that led to the arrest of appellant.
On October 7, 1974, Fennell again returned to appellant’s home to settle the details about the burning of the barns. On this trip, Fire Marshal Lyles was in the car trunk instead of Mr. Barrett. Fennell was equipped with a tape recorder to secretly record his conversation with appellant. The recorder was placed under the seat with the microphone strapped to the side of Fennell’s leg with Fennell’s consent.
When they got to appellant’s home Fen-nell sounded the car horn and appellant came out of the house and got in the car. At first the conversation between appellant and Fennell dealt with buying whiskey so the tape was not turned on as Lyles had told Fennell he was only interested in matters or conversations dealing with the burning of the barns. When the conversation mentioned the burning of the barns, Fen-nell immediately turned on the tape and from then on the conversation between appellant and Fennell was recorded. Appellant agreed to pay Fennell $600.00 the morning that the three barns were burned. The money was to be mailed to Fennell at his address in Scottsboro as it was agreed they should not be seen together.
Appellant and Fennell set October 15, 1974, as the date to meet again and discuss the exact date of the burning. They were to meet at Fennell’s house. Instead of going to Fennell’s house on October 15, as agreed, appellant went to Fennell’s house on October 14, 1974, and stated he wanted to postpone the burning until he could combine and sell his soybean crop and get the money so he would not have to go to the bank and withdraw the $600.00. Lyles had planned to record this meeting between appellant and Fennell but was prevented from doing so because appellant came one day ahead of the scheduled date.
The tape of the October 7, 1974, meeting between the appellant and Fennell was examined by an expert prior to the trial pursuant to appellant’s request and the order of the Court. The tape was played and heard twice at length outside the presence of the jury. No objection has made to the accuracy or authenticity of the tape per se but the defense objected on the ground that to be admissible other parts of the conversation should also have been recorded, and, furthermore, the tape was inaudible in parts. The Court on its own motion excluded certain parts of the tape pertaining to other crimes as being irrelevant to the charge for which appellant was then on trial. At this hearing in chambers it was shown by the testimony of the Fire Marshal that this tape had been in his exclusive possession since it was made and that the tape had not been altered or erased in any manner and had been reviewed by an expert. On the question of the tape being inaudible the Court made the following statement:
“Gentlemen, as to the objection that the transcript is not audible, the Court has heard the transcript again on the portable tape recorder and has listened to it at a distance in excess of twelve feet from where the tape recorder was played; and in the judgment of the Court, the tape was audible at that distance; so your objection on the ground that it’s inaudible will be overruled.”
The tape was then played to the jury but only after the Court had deleted matters entirely irrelevant to. the case.
*1331 Appellant testified in his behalf and admitted the meetings as testified to by Fen-nell and Lyles and the statements testified to by Fennell and Lyles as reflected by the tape recording, but stated that he was not serious in offering Fennell $600.00 to burn the barns of his neighbor, Mr. Cornelison, but that he only wanted to see how far Fennell would go. He further testified that he told Mr. Cornelison, “I am going to set somebody up and I am going to act like I am going to burn your barns and I am going to catch him.”
On rebuttal Mr. Cornelison denied that appellant made any such statement.
The sufficiency of the evidence is not presented to us on this appeal. There was no motion to exclude the State’s evidence; there was no request for the affirmative charge; there were no exceptions reserved to the Court’s oral charge to the jury. Appellant did file a motion for a new trial but no testimony was taken on this motion. The Court directed appellant to file a brief in support of the motion for a new trial and allowed him until August 1, 1975, to file such brief. Appellant did not file a brief and the Court overruled and denied the motion for a new trial. In this posture of the record nothing is presented to review as to the sufficiency of the evidence to sustain the conviction. Jones v. State, 55 Ala.App. 466, 316 So.2d 713; Hurst v. State, 54 Ala.App. 254, 307 So.2d 62; Mosley v. State, 54 Ala.App. 59, 304 So.2d 613; Young v. State, 283 Ala. 676, 220 So.2d 843.
In reviewing the refusal of a motion for a new trial this Court will indulge every presumption in favor of the correctness of the ruling of the trial court and the decision thereon rests largely within the discretion of the trial judge. Clark v. State, 54 Ala.App. 217, 307 So.2d 28; Moore v. State, 52 Ala.App. 179, 290 So.2d 246; Johnson v. State, 51 Ala.App. 172, 283 So.2d 624.
Tape recordings of conversations with persons accused of crimes and played to the jury have been many times approved by the appellate courts of this State. Boulden v. State, 278 Ala. 437, 179 So.2d 20; Flannagin v. State, 289 Ala. 177, 266 So.2d 643; Lykes v. State, 54 Ala.App. 7, 304 So.2d 249; Fikes v. State, 263 Ala. 89, 81 So.2d 303; Wright v. State, 38 Ala.App. 64, 79 So.2d 66.
In Wright v. State, supra, the Court said: “If the parties who were present when the recording was made are available to testify as to the statements made, the recording, even though inaudible, in parts, should be admitted as corroborative of the testimony of the witness or witnesses testifying to the statement.”
Both Fennell and Lyles were present when the statements were made by appellant and recorded on tape and the tape was corroborative of their testimonies. As above pointed out the trial judge deleted from the tape all irrelevant matters. He heard the tape twice in chambers and ruled that the tape was audible. The action of the trial court conformed in every respect with the cases on this subject.
We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
CATES, P. J., and TYSON and DeCAR-LO, JJ., concur.
BOOKOUT, J., recuses himself, as the State Fire Marshal’s office, which participated in the investigation of this offense, was under the supervision of the State Insurance Department and Judge Bookout served as Insurance Commissioner during that time.