First degree murder; sentence: life imprisonment.
Approximately 10:30 P.M. on June 7, 1976, two teenage cousins, William Burrell and Grover Hudson (the deceased), were walking to a neighborhood convenience store in the city of Mobile. They approached the intersection of Michigan and Bay avenues at which an automobile was stopped for a stop sign and walked behind the automobile to cross to the other side of the street. There was some evidence indicating that either Burrell or Hudson hit on the vehicle and said something as they walked around it. After the two teenagers had walked a short distance past the automobile, a shot was fired from the car which hit and killed Grover Hudson. The vehicle, driven by the appellant, then sped off into the night.
Also riding as passengers in the automobile driven by the appellant were Randy Gibson in the right front seat and Larry Jackson in the rear seat. Burrell testified that he had not known Ward or Gibson previously, but had seen Ward for the first time in the vehicle on the occasion of the shooting. He knew Larry Jackson slightly and recognized him as the occupant in the rear seat of the car. All of the occupants of the vehicle were high school aged boys. Burrell and Hudson, the two pedestrians, were black; of the three boys in the automobile, Ward and Gibson were white and Jackson was black.
Larry Jackson testified that Ward and Gibson came by his home earlier on the evening of the killing and picked him up. They stopped for a short time at "Bump City," a local nightclub, and then continued riding. After leaving the club, Ward and Gibson used Ward's .22 caliber pistol to shoot into the windows of two houses. During the course of the evening's joy riding, the three youths together consumed three six packs of beer, as well as three valium tablets each.
Jackson stated that while stopped at the intersection of Bay and Michigan Avenues, *Page 240 
he saw two black youths walk past the car and hit or bang on it. Jackson testified that just prior to the murder, Ward stated that, "Well, if he didn't stop — stop knocking on the car, he was probably going to shoot him." Jackson saw Ward lean across the driver's side of the car past Gibson and heard a shot from the gun. Though Jackson did not actually see Ward fire the shot, he testified that after the gun fired, Ward admitted shooting the victim.
Randy Gibson, the other passenger, testified that while stopped at the intersection he also saw the two youths walk around the automobile. Ward asked whether he should shoot the boys, but Gibson did not think Ward was serious until Ward actually fired the gun and hit one of the youths.
The appellant's testimony in his own behalf, agreed substantially with that of Gibson and Jackson, with the major exception that he contended Gibson fired the fatal shot. Ward testified that when the two black youths walked around the automobile, Gibson called one of them a "_____ nigger" and fired the fatal shot.
Angela Pierce, a friend of the appellant, testified that shortly after the murder, she had a conversation with Gibson wherein Gibson stated that he was the number one killer and was going to have her boyfriend sent away.
Gregory Gardner, testifying in rebuttal for the State, stated that he was with the appellant the day after the murder when the appellant bought a newspaper. After reading the paper, Gardner testified that Ward stated, ". . . why did that guy have to mouth off . . .," and ". . . why did he make me — why did he make me shoot him?" Gardner stated, however, that Ward later said that he did not shoot the deceased, but knew who did.
 I
Appellant contends that the verdict was against the great preponderance of the evidence. We disagree. The weight and probative value to be given the evidence, the credibility of witnesses, the resolution of conflicting testimony, and the inferences to be drawn from the evidence, even where susceptible of more than one rational conclusion, are for the jury. Hall v. State, 57 Ala. App. 132, 326 So.2d 660 (1976). A verdict of conviction must not be set aside on the ground of insufficiency of the evidence unless, after allowing for all reasonable presumptions in favor of its correctness, the preponderance of the evidence against the verdict is so strong as to clearly convince the court that it was incorrect and unjust. Bridges v. State, 284 Ala. 412, 225 So.2d 821 (1969). In the instant case, it is clear that there was legal evidence presented from which they jury could, by fair and reasonable inference, find the appellant guilty of the crime charged in the indictment.
 II
Appellant next contends that the trial court erred in denying his motion for a mistrial where the prosecutor attempted to impeach him by asking if he had gotten into trouble before. The trial record indicates the following exchange:
 "Q. Well, I thought a little while ago you said you were real good friends?
 "A. We are pretty good friends. I am good friends with a lot of people.
 "Q. As a matter of fact, you all have gotten in trouble before, haven't you?
 "MR. SULLIVAN: Your Honor, we are going to object to that and we move for a mistrial.
 "THE COURT: Ladies and Gentlemen, you are not to accept anything from the counselors which pertains to this case. Mr. Valeska, I will appreciate your refraining from any remarks like that.
"MR. VALESKA: Yes, sir; Judge.
 "MR. SULLIVAN: Judge, I have a motion before the Court.
"THE COURT: I deny your motion."
Again, we find no reversible error. First, the appellant gave no answer to the question. Even if the question was considered improper, reversal would not be required because the rule is that, "improper questions not answered are harmless." Kemp v. *Page 241 State, 278 Ala. 637, 179 So.2d 762 (1965); Wilbanks v. State,289 Ala. 171, 266 So.2d 632 (1972). Additionally, any problem presented by the question's possible negative inference upon the jury was cured by the trial judge's immediate instructions removing the matter from consideration by the jury. Crump v.State, 43 Ala. App. 136, 181 So.2d 620 (1965), cert. denied,279 Ala. 686, 181 So.2d 624 (1966): Dufresne v. State, 40 Ala. App. 476, 116 So.2d 385, cert. denied, 270 Ala. 737, 116 So.2d 388
(1959).
 III
Appellant alleges that the trial court erroneously allowed the prosecutor to, "place the jury in the position of a witness" during his closing argument. The questioned language is as follows:
 "MR. VALESKA: And, if you had been there that night . . .
 "MR. SULLIVAN: Your Honor, we are going to object to putting the Jury in the position of being a witness in the case.
"THE COURT: Overrule.
"MR. SULLIVAN: Move for a mistrial.
"THE COURT: Denied."
Here, we find preserved for review this mere fragment of the prosecutor's interrupted statement. Without the remarks which preceded it, the statement is altogether too incomplete for us to say that it worked to the prejudice of the defendant. Embreyv. State, 283 Ala. 110, 214 So.2d 567 (1968).
 IV
The appellant further argues that the prosecutor made an improper threat to the jury in his closing argument which should have been ground for a mistrial. His argument has reference to the following exchange:
 "MR. VALESKA: Because, some day he is going to walk out of that penitentiary.
 "MR. SULLIVAN: Your Honor, we are going to object to that.
"THE COURT: Sustained.
 "MR. SULLIVAN: Your Honor, we would like to state that what Mr. Valeska said to the Jury that some day he would walk out of that penitentiary that is the words we are objecting to and we move for a mistrial.
 "THE COURT: Deny your motion. Ladies and Gentlemen of the Jury, you are to disregard that last remark by Mr. Valeska and not to consider that in your verdict."
We point out first that the statement made by the prosecutor and preserved for the record is again incomplete. Without the prosecutor's preceding statements, it is difficult to determine whether or not the statement was prejudicial. Yet, even assuming the statement to be improper, any harm or possible prejudice was removed by the trial court's immediate action in sustaining the appellant's objection and instructing the jury to disregard the remark. May v. State, 42 Ala. App. 401,166 So.2d 860 (1963), cert. denied, 277 Ala. 700, 166 So.2d 865.
 V
The appellant next contends that the trial court erroneously charged the jury as to Title 14, § 14, Code of Alabama 1940. The appellant's exception to the court's oral charge came outside the presence of the jury. Further, when later asked in the presence of the jury if counsel had any exceptions, the appellant's counsel replied, "No, sir." Exceptions to the court's oral charge must be made in the presence of the jury before they retire for deliberations. Where, as here, appellant's counsel made no exception to the oral charge, but to the contrary replied he had no exception and failed to ask for any clarifying instructions, no part of the oral charge is presented for review. Evans v. State, Ala.Cr.App.,338 So.2d 1033 (1976); Franklin v. State, 45 Ala. App. 27, 221 So.2d 919, cert. denied, 284 Ala. 729, 221 So.2d 921 (1969).
 VI
The appellant alleges it was error for the trial court to refuse to give the affirmative charge and to refuse to exclude the State's *Page 242 
evidence. Appellant's contention is based upon the fact that the appellant was the alleged accomplice of another person in the automobile who testified against him. The appellant argues that there was insufficient corroboration of the accomplice's testimony to sustain the conviction pursuant to Title 15, § 307, Code of Alabama 1940.
The word "corroboration" as used in § 307, supra, merely means to "strengthen" the testimony of the accomplice. Corroboration of the testimony of an accomplice need not be sufficiently strong in and of itself to support a conviction. It is sufficient if it tends to connect the accused with the offense. Cunningham v. State, 54 Ala. App. 656, 312 So.2d 62
(1975).
Both Randy Gibson and Larry Jackson testified that the appellant did the shooting. The appellant contends that Gibson fired the fatal shot. Excluding the testimony of Gibson, we still have the testimony of Larry Jackson. There is no evidence from anyone that Jackson either fired the fatal shot or knew in advance that anyone actually intended to shoot the deceased. Thus, Jackson would not be considered an accomplice, even if Gibson could be considered as such. In addition to Jackson's testimony, we have the testimony of Gregory Gardner that after reading the newspaper account of the murder, appellant stated, ". . . why did he make me — why did he make me shoot him?" That is sufficient corroboration, even though Gardner testified that later Ward denied doing the shooting. Such corroboration goes far beyond merely showing the commission of the offense or the circumstances thereof and is sufficient to sustain the conviction.
 VII
The appellant's last contention is that the trial judge erred in refusing to grant a new trial. The grounds argued are the same as those covered above in parts I-VI of this opinion. The granting or refusing of a motion for new trial rests largely within the sound discretion of the trial judge. Dolberry v.State, Ala.Cr.App., 337 So.2d 1328 (1976). Having carefully reviewed this record, we find no abuse on the part of the court below in refusing to grant the motion for new trial.
Affirmed.
All the Judges concur.