778 So.2d 863 (2000)
B.E.
v.
STATE.
CR-99-0018.
Court of Criminal Appeals of Alabama.
April 28, 2000.
Rehearing Denied June 23, 2000.
Certiorari Denied August 18, 2000.
*864 Steven Garrett, Birmingham, for appellant.
Bill Pryor, atty. gen., and P. David Bjurberg, asst. atty. gen., for appellee.
Alabama Supreme Court 1991921.
LONG, Presiding Judge.
On July 7, 1999, delinquency petitions were filed in the Juvenile Court of Jefferson County, charging the appellant, B.E., a 14-year-old male, with sexual abuse in the first degree, a violation of § 13A-6-66(a)(1), Ala.Code 1975, and with sodomy in the first degree, a violation of § 13A-6-63(a)(1), Ala.Code 1975. After conducting an evidentiary hearing, the juvenile court found the charges in the petitions to be true, and adjudicated the appellant delinquent. The appellant filed a motion for a new trial, which was denied by operation of law after 14 days. See Rule 1(B), Ala. R.Juv.P. This appeal followed.
The alleged victim was the appellant's half sister, A.S., who was five years old at the time of the alleged incident. A.S. testified that, when the appellant was baby-sitting her at their house when their parents were at work, he removed her clothes, "put grease" on her "backside," and then touched her there with his hands. She further testified that the appellant touched the inside of her "bottom" with his penis. She stated that the appellant also touched her on the front of her bodyon the inside of her "pee-pee"with his hand. According to A.S., the appellant told her that if she told anyone about the incident, he would not "let me come back in his room." Approximately three days later, A.S. reported the incident to Ms. Johnnie White, a caretaker at the day-care center she attended.
A.S.'s mother, M.S., testified that in April 1999, Johnnie White telephoned her at work. After the conversation with Ms. White, M.S. said, she took A.S. for an examination by a physician. M.S. stated that A.S. had told her that the appellant had "touched her back and her front," but that A.S. had not gone into any more details about the matter. According to M.S., during the time A.S. and the appellant lived in the house together, A.S. had nightmares and would often complain that "her front hurt her." M.S. said she had assumed that A.S.'s sore front was "from not enough water or riding a bike or something and she fell and hurt herself." She said that after the appellant was taken into custody and removed from the household, A.S.'s nightmares stopped, and she indicated only one more time that her front hurt her.
Johnnie White testified that, using a doll for demonstration, she had conducted a class about inappropriate touching with the children in her care, including A.S., at the day-care center where she worked. White said that after using the doll to show the children in her class the parts of the body it would be inappropriate for someone else to touch, she asked the children if anyone had ever touched them in those places. According to White, only A.S. raised her hand. White stated that A.S. then told her that her brother had been using grease and "a balloon on her between her legs." She stated that A.S. told her that her brother had done this on *865 a day that White had dropped them off at their house. White said she had dropped A.S. and the appellant off at their house a week before the doll demonstration and A.S.'s disclosure to her. White informed M.S. about her conversation with A.S.
Jamie Bradley, a counselor at Prescott House, a child advocacy center, interviewed A.S. about allegations of possible sexual abuse. The interview was videotaped; the videotape was admitted into evidence at the delinquency hearing.
The parties stipulated to the introduction of Dr. Michelle Amaya's medical report concerning a physical examination she had performed on A.S. Dr. Amaya indicated in her report that she did not observe any physical abnormalities in A.S. and that physical characteristics like hers had "been noted in non-abused, prepubertal children." However, Dr. Amaya also noted that her findings did "not preclude the possibility of sexual abuse."
The appellant testified in his own behalf and denied the charges against him. He maintained that A.S. must have gotten the ideas for the charges after watching pornographic videos that the appellant possessed.
On appeal, the appellant contends that the evidence was insufficient to sustain the charges against him. Specifically, he argues that there was no evidence that he used "forcible compulsion" in committing the alleged acts against A.S., which is required to prove sexual abuse in the first degree under § 13A-6-66(a)(1), Ala.Code 1975, and sodomy in the first degree under § 13A-6-63(a)(1), Ala.Code 1975. Section § 13A-6-66(a)(1) provides: "A person commits the crime of sexual abuse in the first degree if ... [h]e subjects another person to sexual contact by forcible compulsion." Section 13A-6-63(a)(1) provides: "A person commits the crime of sodomy in the first degree if ... [h]e engages in deviate sexual intercourse with another person by forcible compulsion."
In Powe v. State, 597 So.2d 721 (Ala. 1991), the Alabama Supreme Court recognized that in cases of sexual offenses committed against children, "forcible compulsion" can include more than the exercise of sheer physical force or threats of violence and is relative, depending upon the facts and circumstances of a particular case.
The Court noted:
"When a defendant who plays an authoritative role in a child's world instructs the child to submit to certain acts, an implied threat of some sort of disciplinary action accompanies the instruction. If the victim is young, inexperienced, and perhaps ignorant of the `wrongness' of the conduct, the child may submit to the acts because the child assumes the conduct is acceptable or because the child does not have the capacity to refuse.....
". . . .
"... [T]he unique relationship between children and the adults who exercise a position of domination in control over them may be taken into consideration in determining whether the element of forcible compulsion has been established."
597 So.2d at 728-29. See also Howell v. State, 636 So.2d 1260 (Ala.1993); and Rhodes v. State, 651 So.2d 1122 (Ala.Cr. App.1994).
In Powe, our Supreme Court quoted with approval the Pennsylvania Supreme Court's opinion in Commonwealth v. Rhodes, 510 Pa. 537, 510 A.2d 1217 (1986), which set out the following factors to be weighed in determining whether the evidence in a particular case supports a finding that the defendant used forcible compulsion against a child:
"`[T]he respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial *866 control over the victim, and whether the victim was under duress.'"
597 So.2d at 728, quoting Commonwealth v. Rhodes, 510 Pa. at 556, 510 A.2d at 1226. The Pennsylvania Court noted that this list of factors was not exclusive. Id.
The evidence in this case indicated that the appellant was in a relationship of trust with A.S., his young half sister, and that he exercised an amount of authority and control over her as well, particularly in the atmosphere and the setting in which the abuse is alleged to have taken place. At the time of the alleged incident, the appellant was baby-sitting A.S. while their parents were at work. No one else was home. As the State says in its brief, "from A.S.'s point of view, she would have to obey [the appellant] because he was left in charge." (State's brief, pp. 6-7.) A.S. was 5 years old at the time of the offense; the appellant was 14. The record indicates that the appellant was 5 feet 11 inches tall and that he weighed approximately 150 pounds. The appellant told A.S. not to tell anyone about the incident and that, if she did, he would not let her back into his room, and it was not until three days later that A.S. reported the incident to Johnnie White at the day-care center. Considering the circumstances herethe abuse being committed by a significantly older and bigger male family member who was exercising sole custodial control over the victim at the time of the alleged actswe find that the evidence was sufficient to present a question for the trier of fact as to whether the acts against A.S. were accomplished by forcible compulsion.
The appellant argues that Powe is inapplicable to the forcible-compulsion analysis in his case because, he says, the holding in Powe is limited to those cases where the defendant is an adult and that that holding cannot be extended to cases where the defendant is, like the appellant, a minor. We disagree, because we think the focus in Powe is on the child victim and the perspective should be that of the child victim; accordingly, where there is a significant enough difference in age or physical maturity between the defendant and the victim, and the defendant occupies a position of authority or control over the victim, forcible compulsion may exist whether or not the defendant is legally an adult.
In challenging the evidence against him, the appellant also argues that the State failed to "prove a crime at a specific time," that there was no physical evidence that a crime had been committed, and that there were inconsistencies and contradictions in the testimony of the State's witnesses. However, the testimony of A.S., M.S., and Johnnie White, taken together, established the time of the offenses with sufficient specificity. Further, A.S.'s testimony, standing alone, was sufficient to sustain the convictions. The medical evidence, moreover, cannot be said to exclude the possibility of sexual abuse. Finally, any inconsistencies or contradictions in the testimony of the witnesses did not, as a matter of law, destroy the probative value of A.S.'s testimony, which was sufficient to make out prima facie cases of first-degree sexual abuse and first-degree sodomy. See Poole v. State, 650 So.2d 541, 543 (Ala.Cr.App.1994). "`The weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and the inferences to be drawn from the evidence, even where susceptible to more than one rational conclusion, are for the [trier of fact].'" Poole, 650 So.2d at 543, quoting Ward v. State, 356 So.2d 238, 240 (Ala.Cr. App.), cert. denied, 356 So.2d 242 (Ala. 1978).
The appellant also complains that the orders of the juvenile court adjudicating him delinquent erroneously indicate that he pleaded "true" to the charges against him. However, the appellant did not bring this matter to juvenile court's attention. Furthermore, it is clear from other portions of the orders in questionand from the record as a wholethat the appellant did not plead guilty and that the adjudications of delinquency were based on evidence *867 presented at a trial-type evidentiary hearing, not on pleas of "true." We can find no harm to the appellant here.
For the reasons stated above, the judgment of the juvenile court is affirmed.
AFFIRMED.
McMILLAN and BASCHAB, JJ., concur; FRY, J., dissents, with opinion, which COBB, J., joins.
FRY, Judge, dissenting.
I respectfully disagree with the majority's conclusion that the state presented sufficient evidence of the required element of "forcible compulsion" to sustain B.E.'s adjudication of delinquency for the charges of sexual abuse in the first degree and sodomy.
Section 13A-6-60(8), Ala.Code 1975, defines forcible compulsion as the "physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person." (Emphasis added.)
The Alabama Supreme Court in Powe v. State, 597 So.2d 721 (Ala.1991), and Howell v. State, 636 So.2d 1260 (Ala.1993); and this Court in Rhodes v. State, 651 So.2d 1122 (Ala.Cr.App.1994), recognized that "forcible compulsion" includes more than the exercise of sheer physical force or threats of violence and "is relative depending upon the facts and circumstances of a particular case." Moreover, if "forcible compulsion" is evidenced by a threat, then the person issuing the threat must play a dominant role in the child's life. As the Supreme Court stated in Powe v. State, "fear of the parent resulting from love or respect may play a role as great as or greater than that played by fear of threats of serious bodily harm in coercing a child to submit to a sexual act." 597 So.2d at 729.
The defendants in Powe, Howell, and Rhodes played a dominant role in their victims's lives. The statements made by the defendants in these cases threatened their victims's physical or emotional well-being. In Powe, the victim testified that she complied with her father's sexual assault because she feared him. In Howell, the defendant, who was the victim's stepfather, used physical force and threatened the victim that if she told anyone what had happened her family would breakup. In Rhodes, the defendant told his victims that if they did not perform oral sex on him, he would deny them food. In each of these cases, the defendant played a dominant role in the victim's life and threatened the victim's physical well-being or the victim's family structure. Thus, the law has narrowly defined when the evidence, in light of the totality of the circumstances, supports a finding that a defendant used forcible compulsion; I believe that these cases establish that the evidence exhibiting "forcible compulsion" must inherently be of such a degree as to place the victim in fear of physical or emotional harm or serious physical injury and must be issued by a person in an authoritative position in the victim's life.
I find the acts of B.E. to be disgusting and deplorable, but I cannot agree with the majority's conclusion that a 14-year old's statement that he would not allow A.S. to enter his room if she told anyone about the incident constitutes "forcible compulsion." B.E., even though he baby-sat A.S., did not play a dominant role in A.S.'s life; he did not have the "great influence that an adult who plays a dominant role in a child's life may exert over the child." Powe v. State, 597 So.2d at 728. This fact is exhibited by the fact that B.E. only babysat A.S. while their parents were at work and by the nature of his threatthe withdrawal of a privilege. Unquestionably, he recognized his limited authority over A.S. by the threat to withdraw a privilege as opposed to a threat of physical harm.
While I agree with the majority that the focus in Powe is on the point of view of the child victim, I cannot agree with the majority's *868 adoption of the state's reasoning that "from A.S.'s point of view, she would have to obey [B.E.] because he was left in charge" and that establishes that B.E. exercised dominant authority and control over A.S. Yes, A.S. was a small child, but her testimony indicated that she knew B.E. was only a baby-sitter. Additionally, A.S.'s spontaneous, voluntary admission to her day care teacher in front of a group of children that B.E. had touched her indicates that she was not timid and that she did not believe B.E.'s threat not to let her enter his bedroom implied disciplinary action or emotional harm. A.S.'s actions and testimony indicate that she did not feel the heightened physical or emotional fear required to establish forcible compulsion. Thus, I do not believe that the facts of this case fit within the narrow definition of forcible compulsion presented in Powe, Howell, and Rhodes. B.E. did not play a dominant role in A.S.'s life and I do not believe that a threat not to let A.S. enter a bedroom if she told what B.E. had done constitutes sufficient evidence of "forcible compulsion."
The Supreme Court in Powe and Howell, and this Court in Rhodes, found by implication that certain acts by a dominant person in the victim's life were the legal equivalent of forcible compulsion. The majority in this case, by diluting the plain meaning of "forcible compulsion," has now made this an element of little significance almost to the point that forcible compulsion is equivalent to annoyance or mere inconvenience to the victim.
The state presented ample evidence that B.E.'s behavior constituted a criminal offense, i.e., child abuse in violation of § 26-15-3, Ala.Code 1975. Moreover, I believe that the facts of this case indicate a criminal offense, which is unfortunately on the rise, that the Legislature needs to address. However, under present Alabama law, I believe the state did not establish the element of forcible compulsion to sustain a finding of delinquency on the charges of sexual abuse in the first degree and sodomy in the first degree; therefore, I must respectfully dissent.