LONG, Presiding Judge.
On July 7, 1999, delinquency petitions were filed in the Juvenile Court of Jefferson County, charging the appellant, B.E., a 14-year-old male, with sexual abuse in the first degree, a violation of § 13A-6-66(a)(1), Ala.Code 1975, and with sodomy in the first degree, a violation of § 13A-6-63(a)(1), Ala.Code 1975. After conducting an evidentiary hearing, the juvenile court found the charges in the petitions to be true, and adjudicated the appellant delinquent. The appellant filed a motion for a new trial, which was denied by operation of law after 14 days. See Rule 1(B), Ala. R.Juv.P. This appeal followed.
The alleged victim was the appellant’s half sister, A.S., who was five years old at the time of the alleged incident. A.S. testified that, when the appellant was babysitting her at their house when their parents were at work, he removed her clothes, “put grease” on her “backside,” and then touched her there with his hands. She further testified that the appellant touched the inside of her “bottom” with his penis. She stated that the appellant also touched her on the front of her body — on the inside of her “pee-pee” — with his hand. According to A.S., the appellant told her that if she told anyone about the incident, he would not “let me come back in his room.” Approximately three days later, A.S. reported the incident to Ms. Johnnie White, a caretaker at the day-care center she attended.
A.S.’s mother, M.S., testified that in April 1999, Johnnie White telephoned her at work. After the conversation with Ms. White, M.S. said, she took A.S. for an examination by a physician. M.S. stated that A.S. had told her that the appellant had “touched her back and her front,” but that A.S. had not gone into any more details about the matter. According to M.S., during the time A.S. and the appellant lived in the house together, A.S. had nightmares and would often complain that “her front hurt her.” M.S. said she had assumed that A.S.’s sore front was “from not enough water or riding a bike or something and she fell and hurt herself.” She said that after the appellant was taken into custody and removed from the household, A.S.’s nightmares stopped, and she indicated only one more time that her front hurt her.
Johnnie White testified that, using a doll for demonstration, she had conducted a class about inappropriate touching with the children in her care, including A.S., at the day-care center where she worked. White said that after using the doll to show the children in her class the parts of the body it would be inappropriate for someone else to touch, she asked the children if anyone had ever touched them in those places. According to White, only A.S. raised her hand. White stated that A.S. then told her that her brother had been using grease and “a balloon on her between her legs.” She stated that A.S. told her that her brother had done this on *865 a day that White had dropped them off at their house. White said she had dropped A.S. and the appellant off at their house a week before the doll demonstration and A.S.’s disclosure to her. White informed M.S. about her conversation with A.S.
Jamie Bradley, a counselor at Prescott House, a child advocacy center, interviewed A.S. about allegations of possible sexual abuse. The interview was videotaped; the videotape was admitted into evidence at the delinquency hearing.
The parties stipulated to the introduction of Dr. Michelle Amaya’s medical report concerning a physical examination she had performed on A.S. Dr. Amaya indicated in her report that she did not observe any physical abnormalities in A.S. and that physical characteristics like hers had “been noted in non-abused, prepubertal children.” However, Dr. Amaya also noted that her findings did “not preclude the possibility of sexual abuse.”
The appellant testified in his own behalf and denied the charges against him. He maintained that A.S. must have gotten the ideas for the charges after watching pornographic videos that the appellant possessed.
On appeal, the appellant contends that the evidence was insufficient to sustain the charges against him. Specifically, he argues that there was no evidence that he used “forcible compulsion” in committing the alleged acts against A.S., which is required to prove sexual abuse in the first degree under § 13A-6-66(a)(l), Ala.Code 1975, and sodomy in the first degree under § 13A-6-63(a)(l), Ala.Code 1975. Section § 13A-6-66(a)(l) provides: “A person commits the crime of sexual abuse in the first degree if ... [h]e subjects another person to sexual contact by forcible compulsion.” Section 13A-6-63(a)(l) provides: “A person commits the crime of sodomy in the first degree if ... [h]e engages in deviate sexual intercourse with another person by forcible compulsion.”
In Powe v. State, 597 So.2d 721 (Ala.1991), the Alabama Supreme Court recognized that in cases of sexual offenses committed against children, “forcible compulsion” can include more than the exercise of sheer physical force or threats of violence and is relative, depending upon the facts and circumstances of a particular case. The Court noted:
“When a defendant who plays an authoritative role in a child’s world instructs the child to submit to certain acts, an implied threat of some sort of disciplinary action accompanies the instruction. If the victim is young, inexperienced, and perhaps ignorant of the ‘wrongness’ of the conduct, the child may submit to the acts because the child assumes the conduct is acceptable or because the child does not have the capacity to refuse.
[[Image here]]
“... [T]he unique relationship between children and the adults who exercise a position of domination in control over them may be taken into consideration in determining whether the element of forcible compulsion has been established.”
597 So.2d at 728-29. See also Howell v. State, 636 So.2d 1260 (Ala.1993); and Rhodes v. State, 651 So.2d 1122 (Ala.Cr.App.1994).
In Powe, our Supreme Court quoted with approval the Pennsylvania Supreme Court’s opinion in Commonwealth v. Rhodes, 510 Pa. 537, 510 A.2d 1217 (1986), which set out the following factors to be weighed in determining whether the evidence in a particular case supports a finding that the defendant used forcible compulsion against a child:
“ ‘[T]he respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial *866 control over the victim, and whether the victim was under duress.’ ”
597 So.2d at 728, quoting Commonwealth v. Rhodes, 510 Pa. at 556, 510 A.2d at 1226. The Pennsylvania Court noted that this list of factors was not exclusive. Id.
The evidence in this case indicated that the appellant was in. a relationship of trust with A.S., his young half sister, and that he exercised an amount of authority and control over her as well, particularly in the atmosphere and the setting in which the abuse is alleged to have taken place. At the time of the alleged incident, the appellant was baby-sitting A.S. while their parents were at work. No one else was home. As the State says in its brief, “from A.S.’s point of view, she would have to obey [the appellant] because he was left in charge.” (State’s brief, pp. 6-7.) A.S. was 5 years old at the time of the offense; the appellant was 14. The record indicates that the appellant was 5 feet 11 inches tall and that he weighed approximately 150 pounds. The appellant told A.S. not to tell anyone about the incident and that, if she did, he would not let her back into his room, and it was not until three days later that A.S. reported the incident to Johnnie White at the day-care center. Considering the circumstances here — the abuse being committed by a significantly older and bigger male family member who was exercising sole custodial control over the victim at the time of the alleged acts — we find that the evidence was sufficient to present a question for the trier of fact as to whether the acts against A.S. were accomplished by forcible compulsion.
The appellant argues that Powe is inapplicable to the forcible-compulsion analysis in his case because, he says, the holding in Powe is limited to those cases where the defendant is an adult and that that holding cannot be extended to cases where the defendant is, like the appellant, a minor. We disagree, because we think the focus in Powe is on the child victim and the perspective should be that of the child victim; accordingly, where there is a significant enough difference in age or physical maturity between the defendant and the victim, and the defendant occupies a position of authority or control over the victim, forcible compulsion may exist whether or not the defendant is legally an adult.
In challenging the evidence against him, the appellant also argues that the State failed to “prove a crime at a specific time,” that there was no physical evidence that a crime had been committed, and that there were inconsistencies and contradictions in the testimony of the State’s witnesses. However, the testimony of A.S., M.S., and Johnnie White, taken together, established the time of the offenses with sufficient specificity. Further, A.S.’s testimony, standing alone, was sufficient to sustain the convictions. The medical evidence, moreover, cannot be said to exclude the possibility of sexual abuse. Finally, any inconsistencies or contradictions in the testimony of the witnesses did not, as a matter of law, destroy the probative value of A.S.’s testimony, which was sufficient to make out prima facie cases of first-degree sexual abuse and first-degree sodomy. See Poole v. State, 650 So.2d 541, 543 (Ala.Cr.App.1994). “ ‘The weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and the inferences to be drawn from the evidence, even where susceptible to more than one rational conclusion, are for the [trier of fact].”’ Poole, 650 So.2d at 543, quoting Ward v. State, 356 So.2d 238, 240 (Ala.Cr.App.), cert. denied, 356 So.2d 242 (Ala.1978).
The appellant also complains that the orders of the juvenile court adjudicating him delinquent erroneously indicate that he pleaded “true” to the charges against him. However, the appellant did not bring this matter to juvenile court’s attention. Furthermore, it is clear from other portions of the orders in question — and from the record as a whole — that the appellant did not plead guilty and that the adjudications of delinquency were based on evi *867 dence presented at a trial-type evidentiary hearing, not on pleas of “true.” We can find no harm to the appellant here.
For the reasons stated above, the judgment of the juvenile court is affirmed.
AFFIRMED.
McMILLAN and BASCHAB, JJ., concur; FRY, J., dissents, with opinion, which COBB, J., joins.