SHAW, Judge.
A delinquency petition was filed in the Juvenile Court of Jefferson County, charging the appellant, J.A.P., a 14-year-old male, with the attempted first-degree rape of his 9-year-old half sister, L.P. The charge was based on allegations that the appellant, in violation of § 13A-4-2, Ala. Code 1975, had attempted to commit the offense of first-degree rape, as that offense is defined in § 13A-6-61(a)(l), Ala.Code 1975. After conducting an evidentiary hearing, the juvenile court found the charge in the petition to be true, and adjudicated the appellant delinquent. We affirm.
The sole issue presented on appeal is whether the evidence was sufficient to support the juvenile court’s judgment. Specifically, the primary question is whether the evidence was sufficient to allow the juvenile court to infer the element of “forcible compulsion.” In his brief to this Court, the appellant states:
“[The appellant] urges that the reason for [his requesting] oral argument is that there is a point of law that controls in this case. That point of law concerns the issue of ‘forcible compulsion.’ The case revolves around whether forcible compulsion was used in this case. He concedes that if forcible compulsion was used, there is a violation of the law.”
(Appellant’s brief at p. 62.)
“ ‘Section 12-15-65(e), Ala.Code 1975, requires that an adjudication of delinquency be supported by “proof beyond a reasonable doubt, based on competent, material[,] and relevant evidence.” The credibility of witnesses and the truthfulness of testimony in delinquency proceedings is for the trier of fact to determine. C.T.L. v. State, 599 So.2d 94 (Ala.Crim.App.1992). Furthermore, in resolving questions of sufficiency of the evidence, this court must view the evidence in the light most favorable to the state. Id.’ ”
R.B.H. v. State, 762 So.2d 382, 383 (Ala.Crim.App.1999), quoting A.A.G. v. State, 668 So.2d 122, 124 (Ala.Crim.App.1995). The sufficiency-of-the-evidence issue was properly preserved upon the juvenile court’s denial of the appellant’s motion for a judgment of acquittal at the close of the State’s case and of the appellant’s motion for a new trial.
*266 Section 13A-4-2 provides, in pertinent part:
“(a) A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.
[[Image here]]
“(c) A person is not liable under this section if, under circumstances manifesting a voluntary and complete renunciation of this criminal intent, he avoided the commission of the offense attempted by abandoning his criminal effort and, if mere abandonment is insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof. The burden of injecting this issue is on the defendant, but this does not shift the burden of proof.”
At the time of the incident made the basis of the delinquency petition, § 13A-6-61 provided, in pertinent part, as follows:
“(a) A male commits the crime of rape in the first degree if:
“(1) He engages in sexual intercourse with a female by forcible compulsion. ...”[1]
The record indicates the following: The incident in question occurred when the appellant and the victim were alone at home. The appellant, who was approximately four and a half years older than the victim, made the victim watch a pornographic video, attempted to engage in sexual intercourse with her, and told the victim not to tell anyone. This was not the first incident of the sexual abuse of the victim. From the time that she was four or five years old, the victim had beén the object of continued sexual abuse by older males, including C.P. (the appellant’s brother, who was five years older than the appellant), a friend of C.P.’s, an uncle, and the appellant. (R. 60-61, 72-73.) The appellant had shown the victim a pornographic video on at least one previous occasion; he had touched the victim in her genital area with his penis on at least one occasion before this incident; and he had touched the victim’s genital area with his fingers on numerous occasions. (R. 60, 62, 72, 79-81.) The evidence also indicated that the appellant and the victim were raised in a dysfunctional household, in the presence of a parent and a stepparent who abused alcohol and/or took illegal drugs, and that they were quite often left to fend for themselves, without parental supervision, and with ready access to pornographic videos. (R. 119-61.)
With respect to the incident in question, the victim testified that the appellant “made” her watch the pornographic video by telling her to “come on” and that she always knew when she was told to watch one of the pornographic videos with her older half brothers that sexual contact would follow. The victim also testified that she was “afraid” of the appellant and that she knew that what he was doing was wrong. (R. 51-54, 57-59, 65-69, 79, 83-85, 90.) The evidence revealed a continuing pattern of sexual abuse by the victim’s older half brothers. The victim acknowledged a fear of any male who wanted to touch her. (R. 92-93.)
The appellant testified that he had been sexually abused by his brother, C.P., on a number of occasions. (R. 172-75.) He also stated during the hearing that nothing had physically prevented him from engaging in sexual intercourse with the victim. He testified that he had aborted his at *267 tempt to penetrate the victim because she began to cry. The evidence also indicated, and the juvenile court noted, that the appellant had previously told a police investigator that he had stopped because he could not physically insert his penis into the victim’s vagina. (R. 202-06.) Based on all the evidence presented at the hearing, including the victim’s in-court testimony and the victim’s recorded statement taken during an interview at the Prescott House,[2] the juvenile court found that the appellant had attempted to engage in sexual intercourse with the victim by forcible compulsion. The juvenile court stated as follows at the close of the hearing:
“[The Court]: ... That’s what he says in this statement to this police officer. He just couldn’t. Then she cried. Then he felt sorry. It’s not like he didn’t know it was wrong. Just because he had people who had sexually offended him all his life doesn’t make it right for him to do it to somebody else. He is not retarded.
“You know, where I hope his brother goes.[3] And if I could, I’d send his parents there too, ... because that’s where they need to be.
“But in the meantime, what least impressed me about your client was his saying one thing to the police and then getting in here and changing his story. I will say to you that that is not conducive to his being in outpatient treatment. He says — I think the State has proven attempted rape. I think the State has proven attempted rape.
“And we have a child here who has been sexually abused — a victim by her brother — older brother and I think [by] him since she was a very little girl....
“... I’ll put it on the record that this little girl has been sexually abused since she was four years old. It is a habit and pattern for her brothers and their friends.
“And, so, I think what happened here — what I can deduce from the evidence and I believe is that this young man had been having sex with her without trying to put his penis in her vagina for a long time. He got older. It’s just a natural course of things. The next thing he decided it might be better if he just did it. Then he didn’t because I don’t think he could. He said to the police he couldn’t get it in her.
“Now, I know we have a different story today. I do believe that when he couldn’t get it in her, he may have at least had a second there to think about it. But by then the deed was done. That’s what I think.
“I also think he needs treatment. I agree with him.[4] I think it has to be inpatient. I don’t think there’s anybody here he could go to anyway. I don’t think there’s anybody here any of these children can go to today.
“And DHR is here. That’s a whole other issue about this poor little girl who now at her little age thinks it’s okay and fun to have sex because she’s been so horribly abused. That’s what she thinks love is. He may too. I agree with you on that.
“I feel sorry for him too, but he’s committed a serious crime. That’s what *268 treatment is about. Because most of our children who do these kinds of things to little girls and little boys have themselves been abused. We know that. But if something doesn’t happen, he’ll continue to do it. It’s his denial that concerns me about what kind of treatment he should get.
“I thank you all. He will need to stay here. I’m going to refer him to sexual offender treatment through the Department of Youth Services.”
(R. 208-11.)
Viewing the evidence in the light most favorable to the State, and indulging all reasonable inferences in favor of the juvenile court’s credibility findings,[5] we affirm the judgment based on this Court’s decision in B.E. v. State, 778 So.2d 863 (Ala.Crim.App.2000). Although the evidence in the present case is not identical to that in B.E., we find the two cases are not materially distinguishable. In B.E., this Court stated:
“In Powe v. State, 597 So.2d 721 (Ala.1991), the Alabama Supreme Court recognized that in cases of sexual offenses committed against children, ‘forcible compulsion’ can include more than the exercise of sheer physical force or threats of violence and is relative, depending upon the facts and circumstances of a particular case. The Court noted:
“ When a defendant who plays an authoritative role in a child’s world instructs the child to submit to certain acts, an implied threat of some sort of disciplinary action accompanies the instruction. If the victim is young, inexperienced, and perhaps ignorant of the “wrongness” of the conduct, the child may submit to the acts because the child assumes the conduct is acceptable or because the child does not have the capacity to refuse ...
[[Image here]]
“ ‘. [T]he unique relationship between children and the adults who exercise a position of domination in control over them may be taken into consideration in determining whether the element of forcible compulsion has been established.’
“597 So.2d at 728-29. See also Howell v. State, 636 So.2d 1260 (Ala.1993); and Rhodes v. State, 651 So.2d 1122 (Ala.Crim.App.1994).
“In Powe, our Supreme Court quoted with approval the Pennsylvania Supreme Court’s opinion in Commonwealth v. Rhodes, 510 Pa. 537, 510 A.2d 1217 (1986), which set out the following factors to be weighed in determining whether the evidence in a particular case supports a finding that the defendant used forcible compulsion against a child:
“ ‘ “[T]he respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.” ’
“597 So.2d at 728, quoting Commonwealth v. Rhodes, 510 Pa. at 556, 510 A.2d at 1226. The Pennsylvania Court noted that this list of factors was not exclusive. Id.
[[Image here]]
*269 “The appellant argues that Powe is inapplicable to the forcible-compulsion analysis in his case because, he says, the holding in Powe is limited to those cases where the defendant is an adult and that that holding cannot be extended to cases where the defendant is, like the appellant, a minor. We disagree, because we think the focus in Powe is on the child victim and the perspective should be that of the child victim; accordingly, where there is a significant enough difference in age or physical maturity between the defendant and the victim, and the defendant occupies a position of authority or control over the victim, forcible compulsion may exist whether or not the defendant is legally an adult.”
778 So.2d at 865-66.
We conclude that this Court’s holding in B.E. is controlling in the present case based on our consideration of the respective ages of the appellant and the victim; the atmosphere and physical setting in which the appellant and the victim lived and in which the incident took place; the extent to which the appellant may have been in a position of domination or influence over the victim; and the extent to which the victim was under mental duress as the result of years of sexual abuse at the hands of older males, including her half brothers. We continue to believe that the focus in cases of this kind, as the Alabama Supreme Court recognized in Powe v. State, 597 So.2d 721 (Ala.1991), must be on the child victim and that the issue of the sufficiency of the evidence to support a finding of forcible compulsion must be resolved by viewing the totality of the evidence from the perspective of the child victim. We also believe that in close cases of this nature, the juvenile court is in a unique position to assess the credibility of the witnesses and to determine whether' a young child was physically compelled or psychologically coerced or conditioned by years of sexual abuse into participating in a sex act with an older child.
“For they have sown the wind, and they shall reap the whirlwind.”[6] There is plenty of blame to be assessed in this difficult case. These children, both the appellant and the victim, are surely a product of their dysfunctional home and morally corrupt environment. The juvenile court, wisely recognizing and acknowledging as much, nonetheless found that the appellant had violated Alabama law, and that court remanded him into the custody of the Department of Youth Services so that he could receive treatment and counseling as a sex offender. For the reasons stated above, the juvenile court’s judgment is affirmed.
AFFIRMED.
McMILLAN, PM., and BASCHAB and WISE, JJ„ concur.
COBB, J., dissents, with opinion.

. Section 13A-6-61 was amended effective August 1, 2000. See Act No. 726, § 1, Ala. Acts 2000.

. Prescott House is a child advocacy center that conducts interviews with children who have made allegations of physical and sexual abuse.

. C.P. was arrested in connection with his sexual contact with the victim. At the time of the hearing he was in the Jefferson County jail. (R. 130.)

.We note that the appellant admitted during his in-court testimony that he needed counseling. (R. 197.)

. As the record indicates, the juvenile court rejected the appellant’s assertion that he had aborted the sexual act because he realized what he was doing was wrong. Therefore, § 13A-4-2(c) has no field of operation here.

. Hosea 8:7 (King James).